## Reese et ux., Appellants, *v.* Northern Insurance Company of New York.

Argued November 11, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Frank R. Sack,* for appellants.

*Richard C. Witt,* with him *White, Jones & Gregg,* for appellee.

OPINION BY ERVIN, P. J., December 16, 1965:

The plaintiffs, Burton Reese and Lissi Reese, his wife, owned a frame dwelling house at 585 Rosedale Street in Pittsburgh, Pennsylvania. On or before April 21, 1961, plaintiffs purchased a Homeowners insurance policy from the defendant, Northern Insurance Company of New York. This policy insured the plaintiffs against loss by certain named perils, including fire, and was effective for a period of three years from April 21, 1961 to April 21, 1964.

On or about January 2, 1963, while the said policy was in full force and effect, the plaintiffs' dwelling was destroyed by fire of accidental origin. After negotiations between the plaintiffs and defendant's adjuster, the plaintiffs agreed to take $14,600.00 in partial settlement of their claim. Of this amount $5,600.00 was accepted as payment for unscheduled personal property, for additional living expenses and for removal of debris. The balance of $9,000.00 represented actual cash value of the dwelling house as depreciated by the adjuster, and agreed to by the plaintiffs. However, plaintiffs in accepting the $9,000.00 reserved the right to recover under the replacement cost endorsement the difference between the $9,000.00 actual cash value and the replacement cost of the dwelling without deduction for depreciation—a sum agreed by both parties to be $4,230.47. Defendant denied liability under the replacement cost clauses and this litigation followed.

As there were no facts in dispute, the parties stipulated the issues for trial without a jury.

The sole question involved is whether the replacement cost provisions of the policy, in effect at the time of the loss, can be utilized without actual replacement or rebuilding.

The pertinent parts of the policy are: "5. CONDITIONS
. . .

"Replacement Cost:

. . .

"(2) If at the time of loss the limit of liability for the dwelling in Coverage A of this policy is eighty per cent (80%) or more of the full replacement cost of the dwelling insured, Coverages A and B[1] only of this policy are extended to include the full cost of repair or replacement without deduction for depreciation.

. . .

"5. This Company's liability for loss under Coverages A and B of this policy, including this replacement cost provision, shall not exceed the smallest of the following amounts: (a) The limit of liability for Coverage A or B, whichever applies; (b) The replacement cost of the building structure or any part thereof identical with such building structure on the same premises and intended for the same occupancy and use; (c) The amount actually and necessarily expended in repairing or replacing said building(s) or any part thereof intended for the same occupancy and use.

. . .

"7. The Insured may elect to disregard this replacement cost provision in making claim under this policy, but such election shall not prejudice the Insured's right to make further claim within a reasonable time after loss for any additional liability brought about by this replacement cost provision."

The parties have agreed that the limit of liability under Coverage A is $15,000.00; that the replacement cost of the damaged building is $13,230.47; that the actual cash value as depreciated is $9,000.00; and that the difference between the latter two figures is $4,-230.47, which is the amount in dispute.

---

[1] Under Coverage A the policy insured the dwelling in the amount of $15,000.00 and under Coverage B insured Appurtenant Private Structures in the amount of $1,500.00. It contained further coverages not involved in this appeal.

The defendant further admits that if sub-paragraph (5) were not in the policy, the plaintiff would be entitled to recover under the provisions of subparagraph (2). The issue is narrowed, therefore, to a construction of subparagraph (5).

The law governing construction of insurance contracts was stated in *Mott v. Fireman's Insurance Co. of Newark,* 188 Pa. Superior Ct. 359, 146 A. 2d 645, as follows: "Any ambiguity in the terms of a policy must be construed against the insurance company in order not to defeat, without plain necessity, the loss insured against."

Again, in *Dzurko v. Pilot Life Insurance Co.,* 195 Pa. Superior Ct. 267, 171 A. 2d 885, it was said: "The law as to construction of insurance policies is well settled, that the policy will be construed most strongly against the insurer who has prepared it; it will be liberally construed in favor of the insured. If any doubt or ambiguity appears as to the meaning of the policy, such doubt or ambiguity should be resolved in favor of the insured. It is also well settled that if the provisions of the policy are reasonably susceptible to two interpretations, it is to be construed in favor of the insured. Blue Anchor Overall Co. v. Pennsylvania L. Mut. Ins., 385 Pa. 394, 123 A. 2d 413 (1956). See: 1 Goldin, The Law of Insurance in Pennsylvania, §237."

The defendant contends that although the policy does not expressly state that the insured is not entitled to a full replacement cost unless and until he actually replaces or rebuilds, this is the end result to be drawn from the language of subparagraph (5)(c). In its brief it says: "Under the terms of paragraph (5) the appellants are limited in the amount of their recovery to the smallest of three different amounts. Here the limit of liability is $15,000.00; the replacement or repair cost of the damaged building is $13,230.47; and the amount actually and necessarily expended in re-

pairing or replacing the damaged building is zero dollars." Defendant's argument is that since the insured did not replace the building, he spent nothing, which is naturally smaller than the amounts established by (5)(a) and (5)(b) respectively. We cannot agree. To carry this argument to its logical conclusion, which the defendant does not do, the insured, unless he rebuilt, would not even be entitled to the sums previously paid to him. We feel that an equally logical interpretation of the clause is that, although the insured is not required to rebuild, if he does so at an amount less than either (5)(a) or (5)(b), he could not recover more than he had actually expended. Such an interpretation would do justice to all parties and under the principle that if the provisions of a policy are reasonably susceptible to two interpretations, we must accept that one.

Judge BROWN of the court below states that there are no Pennsylvania decisions interpreting the clauses involved in this case and, likewise, we have been unable to find any. He cited one New Jersey case, *Ruter v. Northwestern Fire and Marine Ins. Co.*, 72 N.J. Super. 467, 178 A. 2d 640 (certification denied by Supreme Court of N.J., 37 N.J. 229, 181 A. 2d 12).

The policy in that case contained a clause similar in all respects to the provisions of subparagraph (5) in our case. However, it contained an additional clause which provided: "6. THIS COMPANY SHALL NOT BE LIABLE FOR—

"(a) . . .

"(b) Any loss under this endorsement unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and despatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss." That clause expressly requires the insured to replace and he is entitled to recover replacement value.

Had such a clause been included in the present policy, there would be some justification for defendant's contention but such was not the case.

It is our holding that the insured is entitled to utilize the replacement cost provision of the policy without actually rebuilding.

Judgment reversed and the record is remanded to the court below for the entry of judgment in accordance with this opinion.