[No. 47736–1.  En Banc.  January 14, 1982.]

NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, *Petitioner*, v. LEE M. SOLOMON, ET AL, *Respondents*.

*Foulds, Felker, Burns & Johnson, P.S.,* and *John A. McHugh,* for petitioner.

*Delay, Curran & Boling, P.S.,* by *Joseph P. Delay,* for respondents.

DORE, J.—Petitioner National Fire Insurance Company of Hartford appeals from a trial court order denying its motion for an enforcement appraisal mechanism in its insurance contract, and declining to stay further trial proceedings until such requested appraisal was completed.

## FACTS

The subject insurance policy was issued by the petitioner to the respondents, Cosmopolitan Enterprises Company (hereinafter Cosmopolitan). The Zukor Building, owned by Cosmopolitan, was totally destroyed by fire on March 2, 1980. The insurance policy, which is at issue here, was purchased by Cosmopolitan from National Fire Insurance Company of Hartford (hereinafter National Fire). Such policy contained a valuation clause providing for replacement cost coverage which read:

S. VALUATION: Subject to all other provisions and conditions, the following valuations are established for property insured . . .

  1. Insured's buildings, as defined . . . at the full cost to repair or replace the property (without deduction for depreciation) with due diligence and dispatch and within a reasonable time after loss, but not to exceed:

    (a) The cost to replace the property covered on the same site in a condition equal to, but not superior to or more extensive than, the condition when new.

    (b) The amount actually and necessarily expended in repairing or replacing such property or any part thereof.

    (c) The actual cash value of the damaged or destroyed property, if not repaired or replaced within a reasonable time after loss, or if the Insured shall so elect. If the Insured shall elect following loss to make claim on the basis of actual cash value shall have the right to make further claim for additional liability on the basis of additional cost of repair or replacement, provided the Company is notified in writing a reasonable time after loss of the Insured's intent to make further claim.

Such policy also contained an appraisal clause establishing a nonjudicial procedure for determining the amount of loss of property if the insured and insurer could not agree.[1]

---

[1] Appraisal Clause

"9. If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within 60 days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for 15 days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then set the amount of loss, stating separately the actual cash value at the time of loss and the amount of loss and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal;"

Additionally, a no–action clause[2] required full compliance with all policy terms prior to commencement of any lawsuit against the insurer. We must interpret and interrelate these various policy clauses in order to resolve whether or not it was mandatory for the assured to submit to appraisal of losses before commencement of legal action for payment.

Cosmopolitan claims National Fire made an appraisal of the building through its agent, Corkery & Jones Insurance, Inc., and determined the replacement cost and value of the building to be $1,541,919 and the actual cash value at $1,110,182. Cosmopolitan alleges that this appraisal by Corkery & Jones Insurance, Inc., was attached to its application for the subject coverage and forwarded to petitioner's branch office in Seattle. It further claims it was on this basis that the petitioner approved an issue of the policy for $890,000 fire coverage on the basis of this appraisal. Following the fire loss, National Fire brought suit against Cosmopolitan for declaratory relief and reformation of the insurance policy. Soon afterwards, Cosmopolitan commenced a separate action against National Fire for declaratory relief for full policy benefits. Both suits were consolidated for trial. On January 14, 1981, National Fire moved for pretrial summary judgment, seeking implementation of its rights to an appraisal before trial. National Fire also sought summary relief on its reformation claim to remove any replacement cost feature from the policy. In opposition, respondents sought partial summary judgment that the policy be declared an "agreed value" or "value" policy. All motions were denied.

## PARTIES' CONTENTIONS

National Fire interprets the valuation clause of its policy as providing for payment of replacement cost only if the respondents actually replace or rebuild the destroyed

---

[2]No–Action Clause

"4. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy . . ."

building. Petitioner further insists on the precedence of appraisal over trial, even where the subsequent litigation may nullify an appraisal award. Although there is no Washington law on this precise issue, National Fire cites cases from other jurisdictions to support this conclusion. *See Employers' Liability Assurance Corp. v. Traynor,* 354 Mass. 763, 237 N.E.2d 34 (1968); *Thermo–Plastics R & D, Inc. v. General Accident Fire & Life Assurance Corp.,* 42 Mich. App. 418, 202 N.W.2d 703 (1972); *Feinbloom v. Camden Fire Ins. Ass'n,* 54 N.J. Super. 541, 149 A.2d 616 (1959). Under the fire codes, which National Fire claims are incorporated into the contract, the payoff is limited to actual cash value of the building, which sum can be depreciated.

Cosmopolitan, on the other hand, asserts that the policy was actually a "value" or "agreed amount" policy. They alternately argue that the valuation clause gives the insured the option to recover replacement cost without regard to whether, or when, replacement of the building may occur. Respondents state that under either theory, the actual cash value of the building is irrelevant, and appraisal would be useless. On this basis, Cosmopolitan claims that they should not be required to submit to an appraisal prior to litigation.

Cosmopolitan states that the policy's replacement cost language in the appraisal clause doesn't bind the appraiser to determine replacement cost. In regard to replacement insurance, RCW 48.27.020 provides:

> By any contract of insurance of property or of any insurable interest therein, the insurer may in connection with a special provision or endorsement made a part of the policy insure the cost of repair or replacement of such property, if damaged or destroyed by a hazard insured against, and without deduction of depreciation, subject to such reasonable rules and regulations as may be made by the commissioner.

National Fire claims the significant difference between actual cash value and replacement cost is that under

replacement insurance there is no deduction from new costs for depreciation at the time of loss, whereas there *is* a deduction from new costs for depreciation under actual cash value insurance.

Cosmopolitan urges that the policy in question was issued under WAC 284–20–010(3)(c) and (d) as an alternative multi–peril policy, rather than as a "standard fire policy". Under these WAC regulations, the multi–peril policy must be as favorable as the 1943 New York Standard Fire Policy which has been the minimum required under Washington law and which contains an actual cost valuation clause. These WAC regulations specify that the insured has the right to invoke any provision of the "standard fire policy" (which would include the right to appraisal before suit). According to Cosmopolitan's analysis, the insurer is held to the terms of its alternative policy. Cosmopolitan argues that under a replacement cost policy, they would have the right to insist on appraisal, but National Fire would not.

Cosmopolitan also argues that the parties specifically agreed to a $890,000 valuation, thus creating a "value" policy where the total loss was already fixed as liquidated damages. Respondents cite cases from other jurisdictions, holding that the appraisal clause in a "value" policy is inoperative where the loss is total. *See, e.g., National Fire Ins. Co. v. House,* 197 S.W. 476 (Tex. Civ. App. 1917); *Palatine Ins. Co. v. E.K. Hardison Seed Co.,* 42 Tenn. App. 388, 303 S.W.2d 742 (1957). Subsequent to the issuance of the subject policy, National Fire made an on–site inspection and never requested any change in its original appraisal determination, or in the amount of fire insurance coverage issued.

The Zukor Building was totally destroyed approximately 5 months after said inspection on March 2, 1980. It is undisputed that neither improvements nor deterioration had taken place in the said building between the date of the issuance of the policy and the time of the fire. Within a few days after the fire, Cosmopolitan completed a proof–of–

loss form which was supplied by National Fire. On the proof–of–loss form, Cosmopolitan claimed $944,201 on the basis of $890,000 of basic fire coverage, plus two quarters of inflationary increase, bringing the total amount of the fire coverage loss to $944,201.

The subject policy is a "replacement" policy. The building provision of the policy can only be converted to an "actual cash value" policy by a policy endorsement to the lessor. There was no "actual cash value" endorsement affixed to the subject policy; nor did National Fire's denial of the claim state such an endorsement was, or should have been, on the policy.

It was not until after suit was commenced by National Fire that it stated it intended to include an "actual cash value" endorsement to the subject policy but had neglected to do so. The pretrial depositions, however, clearly show that the parties never discussed the terms "actual cash value" or "replacement cost" at any time prior to the fire. Cosmopolitan accepted National Fire's policy as it was issued and delivered, and paid the premium accordingly.

The preamble to the subject policy states the insured is entitled to the "full cost to replace", "without deduction for depreciation", but not to exceed (1) the cost to replace in the condition equal to when new, under S(1)(a); or (2) the amount actually spent to replace the property, under S(1)(b). Provision S(1)(a) does not mandate reconstruction as a condition to precede due payment of the cost to replace. Further, if it did, there would be no purpose to S(1)(b) which alone refers to actual expenditures to repair or replace. There has never been a dispute that the cost to replace would exceed the maximum amount due under the policy of $944,201.

## DECISION

In the event of loss, Cosmopolitan had the option of being paid under S(1)(a), S(1)(b) or S(1)(c) of the valuation clause. There are no terms in the subject policy which give National Fire the right to dictate to the insured which

election the insured must make. Such a strained interpretation cannot be forced upon an insured. The cost of replacement of the building was determined by National Fire immediately after the loss. Cosmopolitan did the same. Such replacement cost far exceeds the policy limits claimed.

█ The replacement cost method of payment does not require the rebuilding of the structure as a condition precedent to the payment of the proceeds under such policy. We rely on the rationale of *Reese v. Northern Ins. Co. of N.Y.,* 207 Pa. Super. Ct. 19, 22, 215 A.2d 266 (1965).

In *Reese,* the sole question involved was whether the replacement cost provision of the policy, in effect at the time of the loss, can be utilized without actual replacement or rebuilding. The court, in *Reese,* refused to require the insured to rebuild the structure before making claim for the proceeds of the policy, provision 7 of which provided:

> "7. The Insured may elect to disregard this replacement cost provision in making claim under this policy, but such election shall not prejudice the Insured's right to make further claim within a reasonable time after loss for any additional liability brought about by this replacement cost provision."

█ In *Jefferson Ins. Co. of N.Y. v. Superior Court,* 3 Cal. 3d 398, 402–03, 475 P.2d 880, 90 Cal. Rptr. 608 (1970), it was held that "actual cash value" within statutory language of fire policy is synonymous with "fair market value" and does not mean replacement cost less depreciation.

Even if we applied the "actual cash value" of the subject policy, the result would be the same. We adopt the holding and rationale of the California Supreme Court in *Jefferson,* that "actual cash value" within statutory language of fire policy is synonymous with "fair market value" and does not mean replacement cost less depreciation. In *Jefferson,* the court stated:

> . . . "Actual cash value," as used in section 2071 of the Insurance Code, is synonymous with "fair market value." (See *Martin v. State Farm Mut. Auto. Ins. Co.,* 200 Cal.App.2d 459, 470 [19 Cal.Rptr. 364]; *Hughes v. Potomac Ins. Co.,* 199 Cal.App.2d 239, 252–253 [18 Cal.Rptr.

650].) . . ."

It is clear that the Legislature did not intend the term "actual cash value" in the standard policy form, set forth in section 2071 of the Insurance Code, to mean replacement cost less depreciation. The term appears not only in the average clause, hereinabove referred to, but also in the insuring clause and must be given the same meaning in both. The latter clause insures "to the extent of the actual cash value of the property at the time of loss, but not exceeding the . . . cost to repair or replace the property. . . ." Since replacement cost less depreciation can *never* exceed replacement cost, it would not be logical to interpret this clause to mean "to the extent of the replacement cost less depreciation, but not exceeding the . . . cost to repair *or replace* the property." (Italics added.) If "actual cash value" had been intended to mean replacement cost less depreciation, the Legislature would not have used "the cost to . . . replace the property" as a limiting factor, and would have specified as a limiting factor only the cost to repair the property.

. . .

Where an appraisal award is based upon a misconception of the law, this fact may be proved to the court by extrinsic evidence, including a declaration of one of the appraisers. The declaration of an appraiser is properly received to show what the appraisers considered the issue to be, for the purpose of determining whether they exceeded their powers by making an error of law. (See *Sapp.* v. *Barenfeld,* 34 Cal.2d 515, 523 [212 P.2d 233]; *Allen* v. *Interinsurance Exchange, supra,* 275 Cal.App.2d 636, 642–643.)

■ The California court then concluded that "when there can be two interpretations of provisions of a policy, the one that will do justice to all parties will be chosen". This principle has recently been affirmed in *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 95 Wn.2d 909, 631 P.2d 947 (1981).

## CONCLUSION

We affirm the Court of Appeals denial of the request of the National Fire Insurance Company to have an appraiser appointed, and enjoining of all legal proceedings until such appraisal is completed. We hold that the subject policy is a

cost of replacement policy, without depreciation, and that such policy does not require rebuilding before one is entitled to the benefits under such policy. We further hold that the insured has the option to request payment in accordance with either S(1)(a) or S(1)(b) or S(1)(c) of the valuation clause. It was not until after the suit was commenced by National Fire that it alleged that it intended to include an "actual cash value" endorsement to the subject policy, but neglected to do so based on a mutual mistake of fact. We hold that on this record there is not a scintilla of evidence that the lack of such endorsement of the policy was caused by mutual mistake of fact.

We believe "actual cash value" is synonymous with "fair market value" as the California Supreme Court concluded in *Jefferson*. Consequently, even if the insurer might persuade us that there was a mutual mistake of fact of endorsement providing for "actual cash value" endorsement to be added, we would interpret such language to be "fair market value" without depreciation.

Accordingly, we remand to the trial court with instructions to conduct the trial in accordance with the provisions reflected in this opinion.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, and DIMMICK, JJ., concur.

Reconsideration denied April 28, 1982.