[No. 13866-2-II. Division Two. November 13, 1991.]

JAMES EMTER, JR., *Appellant*, v. COLUMBIA HEALTH SERVICES, *Respondent*.

---

*Philip A. Foster* and *Marsh, Higgins & Foster,* for appellant.

*Ben Shafton* and *Morse & Bratt,* for respondent.

ALEXANDER, J. — James C. Emter, Jr., appeals an order of the Clark County Superior Court granting a summary judgment to Columbia Health Services. On appeal, Emter contends that the trial court erred in concluding that Columbia was not obligated by the terms of Emter's medical insurance policy with Columbia to pay, up to the limits of the policy, all of the medical expenses incurred by Emter as a result of an automobile accident. We reverse.

Emter received serious injuries when a car he was driving was struck by an automobile driven by Rory McKee. A passenger in Emter's car, Guy Rerick, also received injuries in the accident. It is undisputed that McKee's negligence was the cause of both the accident and the resulting injuries suffered by Emter and Rerick. As a direct result of the accident, Emter incurred medical bills of approximately $200,000.

McKee had a policy with the Safeco Insurance Company, which provided liability coverage of $100,000 per occurrence. The full limits of that policy were distributed directly to Emter and Rerick.

Emter was also covered under a policy of insurance with the Public Employees Mutual Insurance Company (PEMCO), which provided personal injury protection (PIP) of $10,000 as well as underinsured motorist protection (UIM) of $100,000 per person. The PIP funds were distributed directly to one of Emter's medical providers, Providence Hospital of Portland. The right to receive the UIM payment, however, became a matter of dispute between Providence and Emter. PEMCO apparently agreed that it should pay the policy limits of $100,000, but it was faced with competing demands for the funds by Emter and Providence. Consequently, PEMCO commenced an action against Emter and Providence in Clark County Superior Court and paid the $100,000 into superior court, allowing Emter and Providence to interplead their respective claims to the funds. Emter and Providence then stipulated to a judgment which provided that $95,000 of the funds was to be paid to Providence and the balance to Emter.

Emter also had coverage under a policy of medical insurance issued by Columbia Health Services. That policy contained the following clause:

A. Coverage will be excluded for the following expenses incurred, or services rendered for:

. . . .

28. Illness, condition, or injury resulting from a private passenger motor vehicle, to the extent such benefits are available through application for coverage under the terms of any automobile medical insurance or of any automobile "no fault" uninsured or underinsured motorist coverage or similar type insurance.

Columbia was presented with billings from various medical providers which totaled $194,700 for medical services rendered to Emter as a result of the automobile accident. Columbia, relying on the policy language set forth above, concluded that its obligation was only $62,000, the amount by which Emter's medical bills exceeded the amount PEMCO had paid under the PIP and UIM coverage, less deductions and adjustments provided for in the Columbia policy.

Emter then brought suit in Clark County Superior Court against Columbia, contending that the $100,000 UIM payment by PEMCO should not have been deducted by Columbia before its obligation to Emter was determined. He argued that Columbia was obligated to pay all of his medical bills up to the limits of his policy, less any deductible and adjustments. Both parties moved for summary judgment. The trial court granted Columbia's motion.

■■ To resolve this case, we must determine the meaning of the clause in the Columbia policy that contained provisions for exclusions from coverage. If the language of the policy is clear, it must be followed. "Where the intention of the parties is clear from a written contract, the courts have nothing to construe and the contract language controls." *Danielson v. Seattle*, 108 Wn.2d 788, 794, 742 P.2d 717 (1987). In Washington, insurance is a contract, RCW

48.01.040,[1] which, upon interpretation, shall be construed as a whole. RCW 48.18.520.[2] Further, "[i]n construing the language of an insurance policy, the policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 726 P.2d 439 (1986)); *see also Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 545 P.2d 1193 (1976) (construe entire insurance contract as a whole; construe as would average person purchasing insurance: practical and reasonable, rather than literal).

▪ Columbia argues that the language of the clause unambiguously provides that its coverage goes into effect only after exclusion of any amounts received by the insured from "no fault", uninsured, or underinsured motorist coverage. Emter agrees that the language in the clause is unambiguous, but contends that its meaning is that the only exclusion from Columbia's coverage is for amounts received from "no fault" uninsured or underinsured motorist coverage. We agree with Emter. To read the policy under Columbia's interpretation would require us to insert commas after the words "no fault" and uninsured. These commas, which Emter's counsel has referred to as the "$100,000 commas", are not in the policy, and we cannot supply them for Columbia.

Columbia appears to concede that the policy could have been made clearer with the addition of commas.[3] It con-

---

[1] RCW 48.01.040 provides:
"Insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies."

[2] RCW 48.18.520 provides:
"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy . . .."

[3] In its brief, Columbia explains: "The language used in the AUTOMOBILE EXCLUSION is clearly explainable. The term 'no fault' modifies the term 'coverage' . . . Obviously, an error in punctuation was made. For maximum clarity, a

tends, however, that the meaning of the policy is clear because it should be obvious that the term "no fault" does not modify the term "underinsured". This is so, it asserts, because there is no such thing as "no fault" underinsured motorist coverage. In support of this argument, it cites treatises indicating that "no fault" underinsured motorist coverage is unknown in any of the 50 states.[4] Emter contends just as vigorously that "no fault" underinsured motorist insurance does exist. We need not search out the answer to this question, which counsel discuss at some length in their respective briefs, because we are convinced that the existence or nonexistence of "no fault" underinsured motorist coverage is not something that is within the common knowledge of purchasers of insurance. Consequently, purchasers of insurance should not be held to know that the drafter of an insurance policy intended to insert commas where none exist.

Even if we were to conclude that the policy is ambiguous, we would reach the same result. A provision in a policy of insurance is ambiguous if it is susceptible to two reasonable and fair interpretations. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984); *Morgan v. Prudential Ins. Co. of Am.*, *supra*; *Safeco Ins. Co. of Am. v. Davis*, 44 Wn. App. 161, 721 P.2d 550 (1986). To resolve an ambiguity, a court must apply principles of construction. Here, there are two possible sources of law — federal and state. Columbia argues that federal law governs because the Columbia policy is an ERISA[5] based benefit plan, preempting all state laws relating to the plan. Emter argues, on the other hand, that state law applies because interpretation of the provision will, at most, have an

---

comma should be inserted after the term 'no fault' and after the word uninsured. . . ."

[4]Section III, provision 5, of the Columbia Health Services contract expressly provides for worldwide coverage. Arguably, Columbia is asking this court to assume that "no fault" underinsured coverage is unknown anywhere in the world.

[5]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

indirect effect on the plan. In addition, he asserts, the interpretation of insurance contracts is an area of important state concern. Either the "indirect effect" or the "important state interest", Emter maintains, will prevent an ERISA preemption of state law. Again we need not resolve that dispute because, in our judgment, it makes no difference to the resolution of this case. Under federal law, ambiguities in insurance contracts are resolved by applying the principle of *contra proferentum*:

> Insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence.

*Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir.), *cert. denied*, 111 S. Ct. 581 (1990), *reh'g denied*, 111 S. Ct. 803 (1991). Under Washington law, ambiguities are to be construed in favor of the insured, *Witherspoon v. St. Paul Fire & Marine Ins. Co.*, 86 Wn.2d 641, 548 P.2d 302 (1976); *Morgan v. Prudential Ins. Co. of Am., supra*; and ambiguities in exclusionary clauses shall be strictly construed against the insurer. *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 776 P.2d 123 (1989). Under either principle of construction, the ambiguity must be resolved against the insurer and in favor of the insured.

Reversed and remanded to the trial court for entry of an order granting Emter's motion for summary judgment, denying Columbia's and for a determination regarding Emter's entitlement to attorney's fees.[6]

PETRICH, A.C.J., and MORGAN, J., concur.

Reconsideration denied January 8, 1992.

Review denied at 119 Wn.2d 1005 (1992).

---

[6] 29 U.S.C. § 1132(g)(1), the Employee Retirement Income Security Program, provides that: "The court in its discretion may allow a reasonable attorney's fee and costs of action to either party."