[No. 11594-1-III. Division Three. November 24, 1992.]

TIMOTHY K. HESS, ET AL, *Respondents,* v. NORTH PACIFIC
INSURANCE COMPANY, ET AL, *Appellants.*

*Richard C. Feltman* and *Feltman, Gebhardt, Eymann & Jones P.S.,* for appellants.

*William A. Helsell, Robert N. Gellatly,* and *Helsell, Fetterman, Martin, Todd & Hokanson; Fred C. Pflanz, Beverly L. Anderson,* and *Winston & Cashatt,* for respondents.

*J. Tucker Miller,* amicus curiae on behalf of Safeco Insurance Company.

THOMPSON, J. — North Pacific Insurance Company issued a homeowner's policy to Timothy K. and Georgianne H. Hess. The policy covered a dwelling used by Hesses as a summer cabin. On April 22, 1989, while the policy was in effect, the cabin was completely destroyed by fire.

Hesses made a claim under their policy for replacement cost of $43,182.10. North Pacific paid $20,000, the actual cash value of the destroyed dwelling, and rejected Hesses' replacement cost claim because they had not replaced the dwelling and did not intend to do so. Hesses commenced this action to recover the difference between the amount paid as actual cash value and the cost of replacement.

The parties filed cross motions for summary judgment based on stipulated facts. The trial court determined the language of the policy was ambiguous and construed it in

favor of the policyholders. Accordingly, Hesses' motion for summary judgment was granted and North Pacific's motion for summary judgment was denied. We affirm.

Since the parties stipulated to all pertinent facts in their cross motions for summary judgment, the issue is whether Hesses were entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The sole issue on appeal is whether the policy issued to Hesses requires replacement of the destroyed dwelling as a condition of payment based on replacement cost.[1]

As North Pacific contends, a clear and unambiguous provision in an insurance policy must be enforced as written. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988). However, if a provision is fairly susceptible to two different but reasonable interpretations on its face, it is ambiguous and the court must attempt to ascertain what the parties intended. *Transcontinental*, at 456-57.

> To determine the parties' intent, the court first will view the contract as a whole, examining its subject matter and objective, the circumstances of its making, the subsequent conduct of the parties, and the reasonableness of their respective interpretations. *Greer [v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 200, 743 P.2d 1244 (1987)]. If the court determines that the policy remains ambiguous even after its consideration of the extrinsic evidence, the court will apply a meaning and construction most favorable to the insured, even though the insurer may have intended another meaning.

*Transcontinental*, at 457.

Section 1 — Conditions, subpart 3 of the homeowner's policy issued by North Pacific states:

> 3. Loss Settlement. Covered property losses are settled as follows:
> a. . . . .
> b. Buildings . . . at replacement cost without deduction for depreciation, subject to the following:
> (1) . . . we will pay the cost to repair or replace, after application of deductible and without deduction for

---

[1]Safeco Insurance Company filed an amicus curiae brief supporting the position taken by North Pacific in this appeal.

> depreciation, but not more than the least of the fol-
> lowing amounts:
> (a) the limit of liability under this policy that applies
> to the building;
> (b) the replacement cost of that part of the building
> damaged for like construction and use on the same
> premises; or
> (c) the necessary amount actually spent to repair or
> replace the damaged building.

Succinctly rephrased, subpart 3.b. states the insured will pay the least of: (a) policy limits; (b) replacement cost; or (c) actual dollars spent on repair or replacement. "Replacement cost" is not defined in the policy with respect to buildings.

Given a reasonable interpretation, under subpart 3, if an insured elected to rebuild and did so at an amount less than policy limits and less than "replacement cost", recovery would be limited to actual dollars expended. If an insured did not elect to rebuild and no actual dollars were expended, no loss would be payable.

According to North Pacific,

> [i]n many cases, (b) and (c) will be the same if the insurer and insured agree on the replacement cost and the dwelling is actually replaced at that cost, [but in other cases, if the insured and insurer agree on replacement cost, but the insured actually spends less,] the insured would be entitled [only] to . . . the difference between . . . actual cash value and the amount actually spent.

Brief of Appellant, at 16-17. North Pacific contends this limits the insured's recovery and prevents "windfall profits". In essence, North Pacific defines replacement costs as those costs to replace which the insured and the insurer agree to.

North Pacific also contends that subpart 3 does not apply to the settlement of covered losses when an insured elects not to rebuild. Given North Pacific's interpretation, if an insured elects not to rebuild, the policy is converted from a replacement cost policy to an actual cash value policy by operation of subpart 4.[2] Subpart 4, phrased in terms of the

---

[2]"Actual cash value" within language of a fire insurance policy has been held to be synonymous with "fair market value". *National Fire Ins. Co. of Hartford v. Solomon*, 96 Wn.2d 763, 770, 638 P.2d 1259 (1982).

actual cash value of the damage, not the actual cash value of the building, states:

> (4) We will pay no more than the *actual cash value of the damage*[3] unless:
> (a) actual repair or replacement is complete; or
> (b) the cost to repair or replace the damage is both:
> (i) less than 5% of the amount of insurance in this policy on the building; and
> (ii) less than $1,000.

(Italics ours.)

 In determining ambiguity, policy language must be interpreted as an average purchaser of insurance would understand it. *Girtz v. New Hampshire Ins. Co.*, 65 Wn. App. 419, 422, 828 P.2d 90 (1992). Even given North Pacific's definition of "replacement cost" as what the insured and insurer agree on when the insured intends to repair or replace, an average purchaser of insurance would question why subpart 3.b.(1)(b) is in the policy if subpart 4 is interpreted as North Pacific suggests (*i.e.*, if it refers to diminution in market value resulting from the fire rather than to replacement cost). An average purchaser of insurance would also question why 3.b.(1)(c) is in the policy, since North Pacific's interpretation clearly implies that an insured who elects not to rebuild is entitled to no settlement at all. An average purchaser of insurance might then conclude that 3.b.(1)(c) applies when there is replacement, but 3.b.(1)(b) applies if the insured elects not to replace.

 Although an insurance policy is to be construed so as to give force and effect to each clause, *Transcontinental*, at 456-57, it is not possible to give full force and effect to each clause in this policy. Subpart 4, which limits recovery to "actual cash value of the damage" if the insured does not

---

[3]The policy does not define "actual cash value of the damage". According to North Pacific, "actual cash value of the damage" is synonymous with "actual cash value", which is defined in the policy as: "the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration and obsolescence". An additional ambiguity is inherent in the policy language because "actual cash value of the damage" may mean the diminution in the market value of the building resulting from the fire or the undefined replacement cost.

replace, and subpart 3, which permits no recovery if an insured does not replace, are antithetical. On its face, the loss settlement provision is ambiguous.[4]

Having found the policy language ambiguous, we must attempt to ascertain what the parties intended. *Transcontinental*, at 456-57.

There is no evidence in the record to show that the parties ever discussed the term "replacement cost" or whether actual replacement would be a condition precedent to recovering the actual value of damages suffered before the loss occurred. According to North Pacific, what the insurer really intended to say in subparts 3 and 4 was: they will pay (1) "actual cash value" (if a dwelling is not replaced), or (2) the least of replacement costs, policy limits, or actual costs expended to replace (if a dwelling is replaced). If the insurer intends to pay only "actual cash value" unless the insured repairs or replaces the insured property, that intent could have been accomplished by so stating clearly and simply.[5]

---

[4]North Pacific and Safeco cite authorities from other jurisdictions which have determined that language similar to the policy at issue was not ambiguous. *E.g.*, *Higgins v. Insurance Co. of North Am.*, 256 Or. 151, 469 P.2d 766, 66 A.L.R.3d 871 (1970) (interpreting an actual cash value policy). However, we are not persuaded by their reasoning and note that *Higgins* specifically rejected *Reese v. Northern Ins. Co. of N.Y.*, 207 Pa. Super. 19, 215 A.2d 266 (1965), a case specifically embraced in *National Fire Ins. Co. of Hartford v. Solomon*, 96 Wn.2d 763, 638 P.2d 1259 (1982).

[5]North Pacific and Safeco remind us that the policy language is copyrighted and in widespread use. This indicates there was sufficient time and ample resources to develop a policy which an average purchaser of insurance could understand. As stated in *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir.), *cert. denied*, 498 U.S. 1013, 112 L. Ed. 2d 587, 111 S. Ct. 581 (1990), *quoted in Emter v. Columbia Health Servs.*, 63 Wn. App. 378, 384, 819 P.2d 390 (1991), *review denied*, 119 Wn.2d 1005 (1992):

> Insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence.

■ Generally speaking, the replacement cost method of payment does not require the actual rebuilding of the structure as a condition precedent to payment. *National Fire Ins. Co. of Hartford v. Solomon*, 96 Wn.2d 763, 770, 638 P.2d 1259 (1982). Based on the limited extrinsic evidence before us, and the relative reasonableness of the respective interpretations of the parties, the policy remains ambiguous on this point; the meaning and construction most favorable to the insured must be applied. *Transcontinental*, at 457. In so ruling, we do not hold that an insurer cannot make actual replacement a condition of replacement cost payment.[6] We hold only that the language of the policy before us is ambiguous and does not set forth the condition of repair or replacement in language an average purchaser of insurance would understand and no extrinsic evidence has been presented to clarify the ambiguity.

■ Hesses contend if they prevail on appeal, they are entitled to attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). We disagree. *Olympic* does not apply under the circumstances presented. There is no third party claim or lawsuit, coverage was not denied, and the duty to defend was not at issue. Further, we have not been directed to any contractual attorney fee provision.

We affirm.

SHIELDS, C.J., and MUNSON, J., concur.

Review granted at 121 Wn.2d 1008 (1993).

---

[6]RCW 48.27.020 allows an insurance company to provide replacement cost coverage. Neither RCW 48.27.020 nor the rules of the insurance commissioner prohibit a condition requiring actual replacement as a condition to payment based on replacement costs.