# Rotell v. Erie Insurance Group

534

C.P. of Mercer County, no. 1997-55.

*Jason E. Matzus,* for plaintiff.
*Paul K. Geer,* for defendant.

FORNELLI, *P.J.,* March 16, 2001—The matter for disposition is defendant's motion for judgment on the pleadings regarding Count I of plaintiff's complaint. For the reasons set forth hereafter, defendant's motion will be granted.

This matter arises out of a fire that damaged plaintiff Cathy M. Rotell's home on January 10, 1996. Prior to the fire, plaintiff had purchased a homeowner's insurance policy from defendant Erie Insurance Group which

provided fire loss coverage. This policy was in full force and effect at the time of plaintiff's aforementioned loss. Defendant accepted liability for the damage to plaintiff's home and paid the full repair cost of the structure.

A dispute between the parties arose as to the value of plaintiff's personal property destroyed in the fire, as well as the method of determining how much of the loss would be covered by defendant. Pursuant to the language of the policy, parties appointed appraisers to determine both the actual cash value of the destroyed property and the property's replacement cost. The appraisers determined that the actual cash value of the property was $41,597.54 and the replacement cost of the property was $71,303.02. Defendant made payment to the plaintiff in the amount of $30,597.54, representing the actual cash value of the property minus $11,000 in advances made by defendant. There is no evidence that either party has challenged the appraisers' findings and determinations.

Subsequent to defendant's payment of actual cash value less advances, plaintiff demanded the full replacement cost,[1] as determined by the appraisers, of the lost personal property. At the time plaintiff made her demand, she had not replaced all of the items of personal property lost in the fire. The policy at issue provides that, if the entire loss is greater than $1,000. Defendant will not pay

---

1. The policy defines replacement cost as "the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. If the identical article is no longer manufactured or is not available, we will pay the cost of a new article similar to that damaged or destroyed and which is of comparable quality and usefulness." See policy at replacement cost settlement on personal property endorsement.

more than the actual cash value until actual repair or replacement is completed.[2]

On January 8, 2000, plaintiff filed her complaint, demanding payment of the aforesaid replacement cost of her lost personal property. Defendant maintains that, under the policy, plaintiff is only entitled to replacement cost if she first replaces the lost items. Defendant has advised plaintiff that she could obtain full replacement cost if she used her actual cash value payment to purchase additional items, and, if the actual cash value payment was insufficient, defendant would make payment directly to a store or vendor. Plaintiff found this arrangement to be unsatisfactory.

Defendant filed the instant motion for judgment on the pleadings regarding Count I of plaintiff's complaint (the replacement cost provision), and requests that this court give effect to the policy language, as aforesaid, thus dismissing Count I of plaintiff's complaint. Plaintiff contends that the replacement cost provision of the policy is violative of public policy, and, therefore, is void and unenforceable, and, thus, plaintiff is entitled to the replacement cost of her lost personal property, despite the policy language.

## A.

Pennsylvania Rule of Civil Procedure 1034(a) provides that "[a]fter the relevant pleadings are closed, but within

---

2. The policy states "[w]e will pay no more than the actual cash value of the damage until actual repair or replacement is completed . . . ." See policy at replacement cost settlement on personal property endorsement.

such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a); see also, *Mellon Bank N.A. v. National Union Ins. Co.,* 768 A.2d 865 (Pa. Super. 2001). The Superior Court has consistently held that "[a] motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Mellon Bank,* 768 A.2d at 868 (quoting *Citicorp North America Inc. v. Thornton,* 707 A.2d 536, 538 (Pa. Super. 1998)); see also, *Kelaco v. Davis & McKean General Partnership,* 743 A.2d 525, 528 (Pa. Super. 1999); *Cole v. Lawrence,* 701 A.2d 987, 988 (Pa. Super. 1997); *Vetter v. Fun Footwear Co.,* 447 Pa. Super. 84, 87, 668 A.2d 529, 530-31 (1995) (en banc).

In determining whether there is a dispute of facts, this court must restrict its consideration to the pleadings and those relevant documents attached thereto. *Kelaco,* 743 A.2d at 528; *Thornton,* 707 A.2d at 538; *Cole,* 701 A.2d at 988; *Vetter,* 447 Pa. Super. at 87, 668 A.2d at 530-31. Furthermore, this court must accept as true all well-pleaded facts of the non-moving party, while considering against it only those facts it specifically admits. *Mellon Bank,* 768 A.2d at 868.

## B.

The Pennsylvania Supreme Court, in *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 304-305, 469 A.2d 563, 566 (1983), concisely summarized the principles governing the interpretation of insurance policy language, holding that the goal of

such interpretation is ascertaining the intent of the parties as manifested by the language of the written contract. See also, *Koenig v. Progressive Insurance Co.,* 410 Pa. Super. 232, 236, 599 A.2d 690, 691-92 (1991), *appeal denied,* 531 Pa. 640, 611 A.2d 712 (1992). It went on to hold:

"Where a provision of a policy is ambiguous, . . . [it] is to be construed in favor of the insured and against the insurer, the drafter of the agreement. . . . Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Standard Venetian Blind,* 503 Pa. at 305, 469 A.2d at 566. (citations omitted) While the proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured, *Dibble v. Security of America Life Insurance Co.,* 404 Pa. Super. 205, 210, 590 A.2d 352, 354 (1991), an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous. *Zawierucha v. Philadelphia Contributionship Insurance Co.,* 740 A.2d 738, 741 (Pa. Super. 1999), *appeal denied,* 563 Pa. 608, 757 A.2d 934 (2000); *St. Paul Mercury Insurance Co. v. Corbett,* 428 Pa. Super. 54, 59, 630 A.2d 28, 30 (1993), *appeal discontinued,* 535 Pa. 658, 634 A.2d 221 (1993).

Defendant cites *Reese v. Northern Insurance Company of New York,* 207 Pa. Super. 19, 24, 215 A.2d 266, 269 (1965), in which the Superior Court reviewed a replacement cost provision that did not mandate the actual repair or replacement of lost items prior to payment of replacement cost. The court stated, in dicta, that "[h]ad such a clause been included in the present policy, there would

be some justification for defendant's contention [that the insured is not entitled to full replacement cost until and unless he actually replaces or rebuilds] but such was not the case." *Reese,* 207 Pa. Super. at 25, 215 A.2d at 269. Thus, the *Reese* court did not actually endorse the replacement cost provision, but merely stated that the existence of such a provision would have *supported* insurer's argument. Reliance on *Reese* for the proposition that it supports the validity of a replacement cost provision is, therefore, tenuous.

Defendant also cites *Canulli v. Allstate Insurance Company,* 315 Pa. Super. 460, 462 A.2d 286 (1983) for the proposition that the court there determined that the requirement of actual repair or replacement prior to payment in excess of actual cash value was, as a matter of law, consistent with the applicable contract, the applicable statute (40 Pa.C.S. §636) and previous judicial interpretation of that statute. This is an inaccurate reading of *Canulli.* In *Canulli,* the Superior Court held that the trial court's order, granting partial summary judgment in favor of the defendant/insurer in a fire loss claim, which did not terminate litigation between the parties or preclude insureds from litigating their cause of action, was interlocutory, and therefore not final and appealable. *Canulli,* 315 Pa. Super. at 465, 462 A.2d at 290. Thus, the Superior Court lacked jurisdiction and quashed the appeal as improperly taken. *Id.* The language cited by defendant, relating to the validity of the replacement cost provision, appears in the *Canulli* opinion in an excerpt from the trial court's order quoted therein. See *id.* at 464, 462 A.2d at 288. However, the Superior Court neither endorsed the trial court's reading of the policy at issue

nor its legal evaluation thereof; the Superior Court merely quashed the appeal for lack of jurisdiction. Thus, there is no merit to defendant's contention that *Canulli* stands for any proposition related to the validity of a replacement cost provision similar to the one at issue here.

Plaintiff relies on the holding in *Ferguson v. Lakeland Mutual Insurance Company,* 408 Pa. Super. 332, 596 A.2d 883 (1991), *appeal denied,* 531 Pa. 639, 611 A.2d 712 (1992), in support of her argument on unconscionability. In *Ferguson,* the Superior Court held that a homeowner's insurance policy provision that limited the insurer's liability to actual cash value of the property unless replacement has been made was void as unconscionable, because it required the insured to expend a large sum of money *prior to a liability determination. Ferguson,* 408 Pa. Super. at 337, 596 A.2d at 885.

In assessing the validity of the policy provision, the *Ferguson* court relied on the test set forth in *Koval v. Liberty Mutual Insurance Company,* 366 Pa. Super. 415, 531 A.2d 487 (1987), *appeal denied,* 518 Pa. 619, 541 A.2d 746 (1988). *Koval* held: "[T]he test for 'unconscionability' is two-fold. First, one of the parties to the contract must have lacked a 'meaningful choice' about whether to accept the provision in question. Second, the challenged provision must 'unreasonably favor' the other party to the contract." *Koval,* 366 Pa. Super. at 423-24, 531 A.2d at 491. (citations omitted) Ferguson concluded that insurance contracts are contracts of adhesion and therefore, the parties had unequal bargaining power with the insured being forced to adhere to the insurer's terms, satisfying the first prong of the *Koval* test. *Ferguson,* 408 Pa. Super. at 336, 596 A.2d at 885. *Ferguson* also

held that "the second prong of the *Koval* test is also met: the challenged provision unreasonably favors appellant. *Since appellant denied liability,* appellees were faced with the unsavory choice of either accepting the lower actual cash value of the organ or expending a large sum of money in replacement *costs without a guarantee of reimbursement.* In fact, under the terms of the contract, appellees could have only received replacement value in this instance after expending the replacement or repair funds and obtaining a judicial determination concerning liability." *Id.* at 336-37, 596 A.2d at 885. (emphasis supplied)

Plaintiff attempts to bolster her argument by citing *Gilderman v. State Farm Insurance Company,* 437 Pa. Super. 217, 649 A.2d 941 (1994), *allocatur denied,* 541 Pa. 626, 661 A.2d 874 (1995). *Gilderman* held that an insurer that has agreed to pay repair or replacement costs less depreciation in advance of actual repair or replacement of a covered loss may not automatically withhold both depreciation and a flat 20 percent representing contractor overhead and profit from its advance payment. *Gilderman,* 437 Pa. Super. at 219, 649 A.2d at 942. The court noted that the insurer and amicus curiae attempted to reframe the issue into: whether a replacement cost provision similar to the one at issue instantly was void as against public policy, in a "thinly disguised attempt . . . to limit the holding" in *Ferguson. Id.* at 222, 649 A.2d at 943-44. The court stated:

"In *Ferguson,* we struck down as void against public policy a provision requiring an insured who procured replacement cost coverage to actually replace property before receiving the full replacement value of the prop-

erty. In that case, the insurer denied coverage. We reasoned that it was unconscionable to require insureds to procure from their own funds, which they may not have, replacement property prior to receipt of replacement cost since the insureds expected to receive such coverage by purchasing replacement value coverage." *Id.* at 222-23, 649 A.2d at 944.[3] Despite this language, the court later concluded that "[a]ppellants have not asked us to declare void as against public policy the provision requiring repair or replacement prior to payment of full repair or replacement costs. Amicus curiae and State Farm will have to wait to have the issue revisited—in a case wherein it is raised." *Id.* at 223, 649 A.2d at 944. Thus, it appears that the Superior Court has left the door open for a case like the one at bar.

## C.

The case at bar presents facts substantially dissimilar to those in *Ferguson*. Here, defendant admitted liability and guaranteed reimbursement to plaintiff or plaintiff's vendors if plaintiff actually replaced the lost items. Thus, *Ferguson's* reasoning is inapplicable here and the policy provision must be evaluated under both basic contract law and the standards set forth in *Koval* and *Standard Venetian Blind*.

The provision here simply and clearly provides that the defendant "will pay no more than the actual cash value of the damage until actual repair or replacement is com-

---

3. This court notes that *Gilderman's* summary of the *Ferguson* holding is inaccurate when read against the actual language of *Ferguson,* quoted herein.

pleted . . . ." (See policy at replacement cost settlement on personal property endorsement.) Therefore, the language of the contract is clear and unambiguous and this court is required to give effect to that language. *Standard Venetian Blind,* 503 Pa. at 305, 469 A.2d at 566.[4] Because the policy provision is clear and unambiguous, plaintiff may not argue that her reasonable expectations have somehow been frustrated here. *Zawierucha,* 740 A.2d at 741; *Corbett,* 428 Pa. Super. at 59, 630 A.2d at 30.

Next, the present policy provision must be evaluated as to unconscionability. Inquiries into the unconscionability of contract clauses are questions of law for the court to decide. *Bishop v. Washington,* 331 Pa. Super. 387, 399, 480 A.2d 1088, 1094 (1984). Applying the *Koval* test, as did the Superior Court in *Ferguson,* shows substantial differences between the present case and *Ferguson.* With respect to the first prong of the *Koval* test, insurance contracts are contracts of adhesion and therefore, the parties had unequal bargaining power with the insured being forced to adhere to the insurer's terms, satisfying lack of bargaining power requirement. *Ferguson,* 408 Pa. Super. at 336, 596 A.2d at 884; *Bishop,* 331 Pa. Super. at 400, 480 A.2d at 1094. However, the fact that a contract is adhesive does not necessarily render it unenforceable. *Neil v. Allstate Insurance Co.,* 379 Pa. Super. 299, 313, 549 A.2d 1304, 1311 (1988). Thus, although the provi-

---

4. See also, *Kastendiek v. Millers Mutual Insurance Co.,* 946 S.W.2d 35, 40 (Mo. Ct. App. 1997); *Brachter v. State Farm Fire and Casualty Co.,* 961 P.2d 828, 831 (Okla. 1998) (holding replacement cost provisions making payment of replacement cost dependant upon actual repair or replacement are unambiguous).

sion here likely meets the first prong of the *Koval* test, as plaintiff lacked a meaningful choice as to acceptance of the provision, this alone does not render the replacement cost provision unenforceable.

Satisfaction of the second prong of the *Koval* test turns on whether the challenged provision unreasonably favors defendant. *Koval,* 366 Pa. Super. at 423-24, 531 A.2d at 491. The *Ferguson* court, in the above-quoted excerpt, makes clear that its finding that the provision there unreasonably favored insurer was based on: (1) insurer's denial of liability; (2) insureds' "unsavory" choice of either accepting actual cash value or expending a large sum in replacement costs without a guarantee of reimbursement; and (3) any payment of replacement value by insurer hinged on either expending funds or obtaining a judicial determination of liability. *Ferguson,* 408 Pa. Super. at 336-37, 596 A.2d at 885. Thus, the *Ferguson* replacement cost provision was deemed unconscionable despite its clear and unambiguous language.

None of the elements relied upon by the *Ferguson* court in determining the provision there to be unconscionable are present in the instant matter. Here, the defendant has accepted liability for the lost items of personal property, eliminating any need for judicial determination of liability as a prerequisite to recovery. Moreover, while plaintiff must actually repair or replace the property prior to receiving replacement value, she is certainly not faced with the aforesaid choice of accepting actual cash value or expending a large sum without guarantee of reimbursement. Defendant is quite willing to make payment directly to the vendors/dealers of the replacement property, eliminating any out-of-pocket expenditure by

plaintiff and any uncertainty as to the availability of payment. Thus, the provision at issue does not unreasonably favor defendant.[5]

Plaintiff argues that she paid for replacement cost coverage and is entitled to the replacement value of her property notwithstanding her failure to repair or replace the lost items. The clear and unambiguous language of the policy states otherwise and the premiums paid by plaintiff presumably reflect this. Thus, *Ferguson* and *Gilderman* are inapposite and inapplicable to the instant matter.[6] This court must give full force and effect to the

---

5. The provision does favor defendant insofar as it limits defendant's payment of replacement value to the value of those items actually repaired/replaced. However, plaintiff is nonetheless entitled to the actual cash value of any items she does not repair or replace. This is the coverage she purchased and she must abide by the terms thereof.

6. Even if *Ferguson* and *Gilderman* were extended to the case at bar, this court has substantial reservations concerning the soundness of the reasoning therein. *Ferguson* predicates unconscionability on the insurer's denial of liability. Similarly, *State Farm Fire and Casualty Ins. Co. v. Micelli,* 518 N.E.2d 357, 362 (Ill. App. Ct. 1987), *appeal denied,* 522 N.E.2d 1257 (Ill. 1988), held that insureds' failure to repair/replace lost property, as required by the policy, did not preclude recovery of replacement cost, where insurer made compliance with said condition impossible by denying liability. However, the denial of liability is not material to a determination of a policy's unconscionability. Regardless of whether the insurer has accepted or denied policy liability, the insured may still be required to litigate the appropriate measure of damages and the preconditions thereof. Moreover, this reasoning runs counter to long-standing basic contract law. The insurer has provided a limited means for insured to obtain replacement cost for lost property. For this limited right and the risk associated therewith, insurer has charged a given premium. Had plaintiff desired different or broader replacement cost coverage, she was free so to contract, with the requisite increased premium reflecting the absence of a repair or replacement precondition. The *Ferguson* and *Micelli* hold-

contract language. The replacement value provision of the instant policy is not void as unconscionable. Because the clear and unambiguous language of the replacement value provision conditions payment of replacement cost upon the actual repair or replacement of the items of covered loss, plaintiff must abide by this condition in order to be entitled to her replacement cost.

While *Ferguson* and *Gilderman* appear to be the only Pennsylvania cases that evaluate replacement cost provisions, this court's survey of the relevant case law from other jurisdictions augments the above conclusion. Generally, actual replacement of damaged or destroyed property has been held to be a valid prerequisite to the collection of proceeds under a replacement cost endorsement of an insurance policy. Randy R. Koenders, Annotation, *Construction and Effect of Property Insurance Provision Permitting Recovery of Replacement Cost of Property,* 1 A.L.R.5th 817, 829 (1992). A thorough reading of the Annotation and cases cited therein, as well as this court's independent research, reveal nearly unanimous support for the validity of replacement cost provisions that predicate payment of replacement value upon actual repair or replacement. See *e.g., Hilley v. Allstate Insurance Co.,* 562 So.2d 184, 189 (Ala. 1990); *Hess v. North Pacific Ins. Co.,* 859 P.2d 586, 590 (Wash. 1993); *BSF Inc. v. Cason,* 333 S.E.2d 154, 157-58 (Ga. Ct. App. 1985);

---

ings ignore the actual bargain made by the parties to the insurance contract, enlarging the coverage of the policy beyond its natural and obvious meaning, thereby negating the parties' intent. Absent an ambiguity, the parties' expectations are contained in the policy language and ought to be enforced.

*Higginbotham v. American Family Insurance Co.,* 493 N.E.2d 373, 375 (Ill. App. Ct. 1986); *Ferrara v. Insurance Co. of North America,* 521 N.Y.S.2d 668, 670 (N.Y. App. Div. 1987); *Miller v. Farm Bureau Town & Country Insurance Co.,* 6 S.W.3d 432, 438 (Mo. Ct. App. 1999); *Kastendieck v. Millers Mutual Insurance Co.,* 946 S.W.2d 35, 39-40 (Mo. Ct. App. 1997); *Bratcher v. State Farm Fire and Casualty Co.,* 961 P.2d 828, 831 (Okla. 1998); *Snellen v. State Farm Fire and Casualty Co.,* 675 F. Supp. 1064, 1067 (W.D. Ky. 1987) (applying Kentucky law); *Lerer Realty Corp. v. MFB Mutual Insurance Co.,* 474 F.2d 410, 413 (5th Cir. 1973), *reh'g denied,* 477 F.2d 596 (5th Cir. 1973) (applying Texas law); *Kolls v. Aetna Casualty and Surety Co.,* 503 F.2d 569, 570 (8th Cir. 1974) (applying Iowa law); *Whitmer v. Graphic Arts Mutual Insurance Co.,* 410 S.E.2d 642, 645-46 (Va. 1992).

Because the replacement value provision of the policy at issue is unambiguous, and because substantial differences exist between the policy provision here and the one deemed unconscionable in *Ferguson,* the provision here does not meet the second prong of the *Koval* test and, therefore, is not void as unconscionable. Accordingly, defendant's motion for judgment on the pleadings as to Count I of plaintiff's complaint will be granted.

Hence, this order:

## ORDER

And now, March 16, 2001, it is hereby ordered that defendant's motion for judgment on the pleadings regarding Count I of plaintiff's complaint is granted.