MELLON BANK, N.A., Appellant,

v.

NATIONAL UNION INSURANCE COM-
PANY OF PITTSBURGH, PA and
Kaiser Aluminum and Chemical Cor-
poration, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 18, 2000.

Filed Jan. 31, 2001.

Reargument Denied April 4, 2001.

Frank G. Salpietro, Pittsburgh, for appellant.

Richard K. Dandrea, Pittsburgh, for Kaiser Aluminum, appellee.

Larry A. Silverman, Pittsburgh, for National Union, appellee.

Before CAVANAUGH, EAKIN and TAMILIA, JJ.

EAKIN, J.:

¶ 1 Mellon Bank, N.A., appeals from the order granting judgment on the pleadings in favor of appellees, and dismissing with prejudice the claims Mellon asserted in its amended complaint. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2 The trial court has concisely summarized the matter:

Kaiser is the First Named Insured under a commercial crime insurance policy (hereinafter "The Policy") issued by National Union. In March 1996, Kaiser instituted an action against Mellon in the United States District Court for the Western District of Pennsylvania at Civil Action 96–399 alleging that an unknown third party had forged two checks drawn on one of its accounts at Mellon and that Mellon was liable for the payment of these two checks.

During discovery in this Federal Action, a Kaiser representative, Thomas Edwards, testified during a deposition on July 10, 1996 as follows:

MR. HAGUE (Counsel for Mellon): Have you checked with your insurance people to see if you have insurance for this loss, for these losses?

MR. EDWARDS: I believe I've had a conversation with our director of risk management.

MR. HAGUE: And what have you been informed?

MR. EDWARDS: The amount of these checks would not be eligible for recovery.

MR. HAGUE: Why? Is it below your deductible or your SIR (?) or whatever?

MR. EDWARDS: I believe that's—

MR. HAGUE: Is that the case?

MR. EDWARDS: I believe that's along the general lines, yes ...

Kaiser, contrary to Mr. Edwards' testimony, did have coverage for this particular loss, and on November 20, 1996, received a payment in the amount of $259,290.50 from National Union pursuant to the Policy. Under an Assignment and Release Agreement dated January 10, 1997, Kaiser partially assigned its rights against Mellon to National Union. Pursuant to this agreement, Kaiser would receive the first $58,876.17 of any recovery from Mellon, and National Union, as subrogee, would receive the balance of any such recovery.

On July 24, 1997, following a trial, Mellon was found liable to Kaiser for the forgery losses and a judgment was entered against Mellon. Mellon appealed this judgment to the Court of Appeals for the Third Circuit, during the pendency of this appeal, Mellon learned that Kaiser did indeed have insurance coverage for this loss and that Kaiser did receive a payment from National Union.

In March, 1999, Mellon instituted a civil action in this Court by Complaint. Both Defendants filed Preliminary Objections which were argued before the Honorable Alan S. Penkower of this Court. On October 21, 1999, Judge Penkower overruled National Union's Preliminary Objections and similarly overruled Kaiser's Preliminary Objections except for Kaiser's demurrer to Count V which was sustained.

Mellon filed an Amended Complaint on November 5, 1999. Both Defendants filed Answers and New Matter to which Mellon filed Replies. Defendants then filed the instant Motions for Judgment on the Pleadings. After review of all the pleadings, the briefs and argument, this Court granted Defendants' Motions and dismissed the Amended Complaint. This Appeal followed.

Trial Court Opinion, 3/29/00, at 1–2.

¶ 3 Mellon raises three issues for our review:

1. Whether the lower court erred in dismissing the Amended Complaint and ruling that Appellant was not an insured under an insurance policy, where Appellees *admitted* for purposes of their Motions for Judgment on the Pleadings that Appellant *was* an insured, where the issue of Appellant's insured status was not raised in Appellees' Motions, and where it appears that the lower court ignored or failed to review material documents and evidence.

2. Whether the lower court erred in dismissing the Amended Complaint and ruling. that the "compensated surety rule" is dependent upon Appellant's status as an insured, where the application of the rule is completely independent of that status.

3. Whether the lower court erred in dismissing the Amended Complaint and ruling that Federal Rule of Civil Procedure 60 barred Appellant's claims, where Appellant was not seeking relief from a federal court judgment.

Appellant's Brief, at 4 (emphasis in original).

¶ 4 Pennsylvania Rule of Civil Procedure 1034 authorizes entry of judgment on the pleadings after the pleadings are closed, but within such time as not to delay trial. "A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Citicorp North America, Inc. v. Thornton*, 707 A.2d 536, 538 (Pa.Super.1998). On appeal from a grant of judgment on the pleadings, our scope of review is plenary. *Kelly v. Nationwide Insurance Company*, 414 Pa.Super. 6, 606 A.2d 470, 471 (1992). We must determine whether the trial court's ruling was based on a clear error of law .or whether the pleadings disclosed facts which properly should go to the jury. *Id.* Further, we must accept as true all well-pleaded facts of the non-moving party, while considering against it only those facts it specifically admits. *Id.*

¶ 5 Mellon alleges it is an insured under the Depositors Forgery Coverage provisions of the Policy. For purposes of its motion for judgment on the pleadings only, National Union admitted Mellon is an insured under the Policy in its supporting

brief. Although Mellon relies heavily on this "admission," the trial court specifically found National Union's statement was not a binding admission, and concluded Mellon is not an insured under the Policy as a matter of law.

¶ 6 The trial court did not err in rejecting the contention that National Union made a binding admission; National Union consistently and repeatedly denied Mellon is an insured, admitting such status only for the purposes of its argument that Mellon's claim is barred by the "Joint Insured" clause in the Policy. In other words, National Union contended that assuming *arguendo* Mellon is an insured under the Policy, Mellon would not be entitled to relief because its payment to Kaiser as First Named Insured fully released National Union from further liability for the forgery. ,National Union was clear its "admission" was made consonant with the prescribed standard for judgment on the pleadings, as stated above. Perhaps this "admission" was not limited as artfully as it might have been, but, taken in context, we find no error in declining to hold it to be a binding admission for purposes other than the "Joint Insured" argument.

¶ 7 We are also mindful of the well-settled principle applied to a motion for judgment on the pleadings: neither party will be deemed to have admitted conclusions of law. *Hammerstein v. Lindsay*, 440 Pa.Super. 350, 655 A.2d 597, 601 (1995); *Kelly*, at 471. Mellon's allegation that it is an insured under the Policy is a conclusion of law based on the terms of the contract; we do not accept it as fact. *Keystone Automated Equipment Co., Inc. v. Reliance Insurance Co.*, 369 Pa.Super. 472, 535 A.2d 648, 650 (1988), *appeal denied*, 519 Pa. 654, 546 A.2d 59 (1988). The interpretation of that contract, including Mellon's status as an insured, is a question of law for the court's determination.[1] *Mad-*

---

1. "A legal conclusion is a statement of a legal duty without stating the facts from which the duty arises. A statement of the existence of a fact could be a legal conclusion if the fact stated is one of the ultimate issues in the proceeding." *Kaiser v. Western States Administrators*, 702 A.2d 609, 614 (Pa.Cmwlth.

*ison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999). As stated above, the trial court examined the terms of the Policy and concluded Mellon is not an insured as a matter of law.

¶ 8 We begin with the policy language; our goal is to ascertain the intent of the parties, as reflected in that language. *Madison,* at 106. As with any contract, we read an insurance policy in its entirety to determine intent, *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 705 A.2d 422, 426 (1997), and must ·construe words "in their natural, plain and ordinary sense." *Id.* We give effect to language which is clear and unambiguous. *Madison,* at 106. Contractual terms are deemed ambiguous if they are susceptible of more than one reasonable interpretation when applied to a particular set of facts. *Id.* We will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.*

¶ 9 The provision entitled "Depositors Forgery Coverage" states, in pertinent part:

V. *Loss which the Insured or any bank which is included in the Insured's proof of loss* and in which the Insured carries a checking or savings account, as their respective interests may appear, *shall sustain through forgery* or alteration of, on or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by or drawn upon the Insured, or made or drawn by one acting as agent of .the Insured, or purporting to have been made or drawn as hereinbefore set forth, in-cluding

(a) any check or draft made or drawn in the name of the Insured, payable to a fictitious payee and endorsed in the name of such fictitious payee.

(b) any check or draft procured in a face to face transaction with the Insured, or with one acting as agent of the Insured, by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one so impersonated; and

(c) any payroll check, payroll draft or payroll order made or drawn by the Insured, payable to the bearer as well as to a named payee and.endorsed by anyone other than the named payee without authority from such payee;

whether or not any endorsement mentioned in (a), (b) or (c) be a forgery within the law of the place controlling the construction thereof.

Mechanically reproduced facsimile signatures are treated the same as handwritten signatures:

The Insured shall be entitled to priority of payment over loss sustained by any bank aforesaid. Loss under this Insuring Agreement, whether sustained by the insured or such bank, shall be paid directly to the Insured in its own name, except in cases where such bank shall have already fully reimbursed the Insured for such loss. The liability of the company to such bank for such loss shall be a part of and not in addition to the amount of insurance applicable to the Insured's office to which such loss would have been allocated had such loss been sustained by the Insured.

Policy, at § V (emphasis added).

¶ 10 The trial court found this language to be clear and unambiguous: Mellon must be included in the proof of loss to be insured under the Policy. Mellon did not allege ·it was a named insured under the Policy, nor did it allege it was included in Kaiser's proof of loss. Based on these deficiencies, and Mellon's failure to proffer any evidence it was included in the proof

1997). A conclusion of law has no place in a pleading. *Id.*

of loss, the court concluded Mellon was not an insured.

¶ 11 Mellon asserts the trial court committed reversible error in looking beyond the pleadings to find Kaiser's proof of loss. In ruling on a motion for judgment on the pleadings, the court may consider only the pleadings and attached documents. *Spack v. Apostolidis*, 353 Pa.Super. 362, 510 A.2d 352, 352–53 (1986). Mellon failed to attach a copy of Kaiser's proof of loss to its complaint or amended complaint, but did attach that document to its response to National Union's preliminary objections. Pursuant to Pa.R.C.P. 1017, the trial court properly considered a relevant attachment to a pleading, since an answer to a preliminary objection is deemed a pleading under that rule. As Mellon placed the proof of loss in the record, and Mellon does not dispute the accuracy or authenticity of that document, it cannot now complain when the courts review that document. *See, e.g., Kosor v. Harleysville Mutual Insurance Co.*, 407 Pa.Super. 68, 595 A.2d 128, 131 (1991)(in appeal from entry of judgment on the pleadings, insured cannot be prejudiced by consideration of policies not attached to pleadings, but attached only to reconsideration papers, where all parties and trial court considered these policies and there is no dispute attachments were true and correct copies of originals).

¶ 12 Mellon also asserts it *is* included in the proof of loss because, while not specifically named as an insured in that document, references to Mellon appear in attached correspondence. Those references, however, appear in the context of Kaiser's discussion of its legal action against Mellon to establish liability for the forgery losses. It is plain from the correspondence that Kaiser blamed Mellon for the loss and was taking legal action to recover its losses. Kaiser was not including Mellon in the proof of loss and certainly was not suggesting that Mellon receive proceeds of the Policy. Only under a contrived or strained interpretation of the Pol-

icy would such references satisfy the requirement that Mellon was included in Kaiser's proof of loss. We see no ambiguity in the Policy as to that requirement, *Madison, supra;* permitting Mellon to proceed to discovery to determine some other intended meaning would be an unavailing use of the court's time and the parties' resources.

¶ 13 Mellon also asserts the issue of whether it is an insured was decided when Judge Penkower overruled National Union's preliminary objections. Absent additional evidence in that regard, Mellon argues Judge Penkower's ruling became the law of the case and Judge Jaffe had no authority to revisit the question on the same set of facts. We disagree.

¶ 14 Pennsylvania law has long recognized that judges of coordinate jurisdiction, sitting in the same case, should not overrule one another's decisions. *Riccio,* at 425. However, application of this principle focuses on the procedural posture of the rulings in question. *Gerrow v. Shincor Silicones, Inc.*, 756 A.2d 697, 701 (Pa.Super.2000). The Pennsylvania Supreme Court has made clear:

> Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion *of the same kind* has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Goldey v. Trustees of the University of Pennsylvania*, 544 Pa. 150, 675 A.2d 264, 267 (1996)(emphasis in original). We are presented with the same procedural posture used in the Supreme Court's analysis: a denial of preliminary objections, followed by a grant of motions for judgment on the pleadings by another judge of the same

court. Based on the reasoning of *Goldey*, although National Union argued to Judge Penkower that Mellon was not insured under the Policy, Judge Jaffe was not precluded from later ruling on the issue in the context of the motions for judgment on the pleadings. That Judge Penkower did not write an opinion explaining why he overruled the preliminary objections does not control Judge Jaffe's authority to rule on that issue when presented in a different type of motion.

¶ 15 For all of these reasons, we reach the same conclusion as the trial court: Mellon is not an insured under the Policy.[2] In light of this conclusion, we need not address Mellon's contention that National Union was precluded from recovering, by way of subrogation, against Mellon as its own insured.

 ¶ 16 In Count II of its amended complaint, Mellon alleged National Union had no right to demand or obtain payment from Mellon because

[a]s a compensated surety that was subrogated to Kaiser's rights on November 20, 1996 at the time of paying Kaiser for its loss, National Union cannot now claim or exercise subrogation rights against Mellon whose equitable rights are greater than or equal to National Union's rights.

Amended Complaint, at ¶ 22. The trial court determined Mellon's claim under the compensated surety rule must fail, because it was grounded on Mellon's status as an insured. Mellon asserts the compensated surety rule does not depend on its status as an insured, but rather, is guided by equitable principles: National Union (which was paid a premium to provide coverage and security to Kaiser), has an

equitable position inferior to that of Mellon (which also was wronged by the forgery). Mellon contends that under the compensated surety (or superior equities) rule, the right to subrogation will not be recognized unless National Union (the already compensated subrogee) has an equity superior to that of Mellon. Mellon asserts even if it is not an insured under the Policy, its equities are equal or superior to those of National Union (the compensated surety).

 ¶ 17 For the reasons discussed below, we agree the superior equities doctrine applies in this case. As a threshold matter, it is clear that in this jurisdiction subrogation is equitable in nature, regardless of any applicable contractual language. *Kaiser v. Old Republic Insurance Co.*, 741 A.2d 748, 754 (Pa.Super.1999); *Daley–Sand v. West American Insurance Co.*, 387 Pa.Super. 630, 564 A.2d 965, 970 (1989). But does the superior equities doctrine apply where, as here, subrogation and assignment is based on contract? In *Grubnau v. Centennial National Bank*, 279 Pa. 501, 124 A. 142 (1924), the insurer paid its insured for losses it incurred when two forged checks were paid out of its account. After taking a written assignment from its insured of its claims against the bank, the insurer filed suit and won. In affirming the judgment against the bank, the Supreme Court rejected the bank's argument that its equities were superior to that of the insurance company. The Court reasoned:

It would be a novel proposition to hold that an insurance contract could reach out to indemnify a stranger, in no way a party to the insurance, whose wrongful act caused the insurance company to pay loss to the insured which would not have

---

**2.** Mellon contends its status as an insured was not at issue for purposes of the motions for judgment on the pleadings. However, except for its argument based on the superior equities doctrine, discussed *infra*, Mellon's claims are premised on its status as an insured. National Union specifically requested in its motion that Mellon's claims be dismissed with prejudice. Moreover, Mellon's status as an

insured is at least implicitly raised in Kaiser's motion for judgment on the pleadings. The trial court made clear it believed Mellon's alleged status as an insured under the Policy was interrelated with (indeed, dispositive of) its claims National Union and Kaiser concealed the existence of the Policy. *See* Trial Court Opinion, at 6.

occurred but for the wrongful act. Such protection would be given without cost or contractual relation, merely because the person wronged chooses to collect from the insurance company first, rather than the bank which afterwards disputed the claim on this and other grounds connected with the forged check.

*Id.*, at 143–44. Mellon relies heavily on the equitable nature of subrogation, dismissing the Supreme Court's reasoning in *Grubnau* as "unsound." Mellon relies on statements of National Union that its rights against Mellon arise solely from subrogation. It also relies on *dicta* appearing at the end of the *Grubnau* decision: "Nor is it a case of subrogation, wherein the equities of the bank may be said to exceed those of the insurer." *Id.*, at 506, 124 A. 142.

¶ 18 Based on Pennsylvania's strong tradition of viewing subrogation as equitable in nature, and in the absence of authority to the contrary, we are persuaded the superior equities doctrine applies in cases involving subrogation. Accordingly, we reverse the trial court's dismissal of Count II of the amended complaint and remand so the court may balance the equities and determine which party occupies the superior equitable position.

¶ 19 Application of the superior equities doctrine has been explained in this manner:

> [Under the superior equities doctrine,] an insurer may not be allowed to recover from any party whose equities are equal or superior to the insurer's. In comparing the relative positions of the subrogee and the subrogation defendant, the court decides who ultimately should bear the loss. Sometimes called "balancing the equities," the doctrine draws upon the court's concept of fairness and, where apposite, the perceived intent of the parties. For example, an insured pays a premium to transfer its risk and, therefore, always has equities superior to those of the insurer. The wrongdoer, being culpable and the ultimate cause of the loss, always loses to

the superior equities of the insurer. *Difficulties may arise, however, when weighing the equities of third parties whose conduct contributed to or permitted the loss.* Directors and officers of the insured, accountants, attorneys, *banks,* and others may be involved in the circumstances surrounding the loss, with greater or lesser degrees of responsibility. *When the insurer sues one of these third parties, the courts still look for the party who, in good conscience, ultimately ought to bear the loss.*

Gregory R. Veal, *Subrogation: The Duties and Obligations of the Insured and Rights of the Insurer Revisited,* 28 Tort and Insurance Law Journal 69, 70–71 (1992)(emphasis added). Exhaustive research has disclosed little direction from other courts (or commentators) as to what factors should be considered in balancing the equities. Two relevant factors may include the level of culpability of the bank and any pertinent public policy considerations. In *American Security Bank, N.A. v. American Motorists Insurance Co.,* 538 A.2d 736 (D.C.1988), a case also involving a bank's payment on forged checks, the Court of Appeals for the District of Columbia concluded the "balance of the equities" was indistinguishable from the merits of the case. *Id.,* at 737 n. 1. Thus, if the bank was found negligent in cashing the forged checks, the insurer possessed superior equities because it did not contribute to the forgeries. *Id.* Similarly, although *Grubnau* involved assignment only, the Pennsylvania Supreme Court considered the bank's status as a wrongdoer. *Id.,* at 143–44. Other courts also have considered whether the bank (or entity occupying an analogous position) played any role in causing the loss. *See, e.g., Federal Insurance Co. v. Arthur Andersen & Co.,* 75 N.Y.2d 366, 553 N.Y.S.2d 291, 552 N.E.2d 870, 876 (1990)(whether accountant breached its duty to insured in failing to discover defalcations of insured's employee); *U.S.F. & G. v. First National Bank of South Carolina of Columbia,* 244 S.C. 436, 137

S.E.2d 582, 590 (1964)(whether bank was free of negligence in clearing checks containing forgeries and alterations and whether it obtained any benefit from forgeries).

¶ 20 Public policy considerations may also impact the analysis of this case. "Regardless of the words used, the courts usually seek the entity who ultimately, either through policy or through the parties intent, ought to bear the loss. With this concept in mind, the insurer should be able to pursue any third party who arguably has ultimate responsibility for a covered loss notwithstanding the insurer's compensated status." Veal, *supra*, at 87. In *Dispatch Services, Inc. v. Airport Bank of Miami*, 266 So.2d 127, 128–29 (Fla.3d Dist. Ct.App.1972), policy considerations shifted the balance of equities in favor of a surety's right of subrogation based on the principle that a bank is absolutely liable to its depositor for payment of a forged check.

¶ 21 Mellon appears to claim its superior equitable position is based solely on its claim that it also was a wronged party (and only statutorily culpable), whereas National Union was paid a premium to provide coverage to Kaiser, the other wronged party. We are not persuaded by that argument. We believe a "balance of the equities" would not favor a simplistic and bright-line rule such as Mellon asserts since it fails to consider which party, *under the particular circumstances of the case*, should in good conscience bear the loss. As the Court of Appeals of New York observed:

The rule defendant urges here would allow it to escape liability simply because the victim, B & B, carried fidelity insurance. In effect, defendant seeks to avail itself of B & B's fidelity insurance as its own liability policy without paying for it. Such a rule would be contrary to precedent and we see no reason in policy or fairness for adopting. Moreover, it would conflict with the basic notion of subrogation as the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it." *Federal Insurance Co.*, at 876 (citation omitted).

¶ 22 Accordingly, we remand this case to the trial court to determine which party, Mellon or National Union, has superior equities under the circumstances of this case. The court should consider any role the bank may have had in causing the loss, plus any relevant policy considerations underlying the statute upon which Mellon was found liable in the federal action.

¶ 23 Finally, Mellon contends the trial court erred in ruling the instant action is barred by F.R.C.P. 60(b). The trial court faulted Mellon for failing to seek relief pursuant to that rule, which provides a means to obtain relief from a judgment due to, *inter alia*, fraud, mistake or newly discovered evidence. Mellon claims the judgment was obtained by fraud because during the federal litigation Kaiser falsely stated its forgery losses were not covered by insurance. Nevertheless, Mellon insists it is not using the instant action to attack the federal judgment, but rather seeks reimbursement for monies "Mellon should not have paid to National Union." However, we need not address this argument in detail, as we have concluded Mellon was not an insured under the Policy; Mellon would not be entitled to reimbursement unless it prevails on its compensated surety claim on remand.

¶ 24 We affirm the trial court's grant of judgment on the pleadings in favor of Kaiser and National Union, except to the extent it ruled on Mellon's compensated surety claim (Count II of its amended complaint). We reverse the court's dismissal of that claim and remand so the court may balance the equities as directed in this decision.

¶ 25 Judgment affirmed in part; reversed in part and remanded. Jurisdiction relinquished.