J-A08045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEFFREY GALEONE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODEWAY INN CENTER CITY, A/K/A | : | No. 1143 EDA 2020 |
| MILLENIUM HOTEL GROUP, LLC, | : | |
| CHOICE HOTELS, A/K/A CHOICE | : | |
| HOTELS INTERNATIONAL, INC, AND | : | |
| BRIAN K., MANAGER OF RODEWAY | : | |
| INN | : | |

Appeal from the Order Entered February 25, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180701536

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 23, 2021**

Appellant, Jeffrey Galeone ("Galeone") appeals from the order entered in the Court of Common Pleas of Philadelphia County granting motions for Summary Judgment in favor of Appellees/Defendants Choice Hotels ("Choice"), Rodeway Inn Center City ("Rodeway"), and Rodeway Manager Brian K. ("Brian K."). The trial court determined Galeone had failed to properly serve upon Appellees/Defendants his Complaint/Amended Complaint in compliance with the Rules of Civil Procedure, to proffer expert medical testimony necessary to his claim of Intentional Infliction of Emotional Distress ("IIED"), and to establish a *prima facie* case of vicarious liability against

_____

[*] Former Justice specially assigned to the Superior Court.

franchisor Choice for the actions of franchisee Rodeway.  For the following reasons, we affirm.

The trial court aptly sets forth the underlying facts, as follows:

All parties agree that on August 6, 2017, Plaintiff [hereinafter, "Galeone"] went to the Rodeway Inn Center City on 1208 Walnut Street in Philadelphia, Pennsylvania, to book a room.  At the time in question, Choice Hotels, International, Inc. operated as the franchisor of the Rodeway Inn.  Galeone needed a hotel room for the night because he was visiting friends, and Rodeway Inn was convenient for him. Upon entering the lobby, Galeone spoke with Brian K., the working manager at Rodeway, about booking a room.  Galeone had his prescribed service dog with him; he is disabled, suffering from epilepsy, a serious and permanent seizure disorder causing him to have seizures without warning.  At some point during the encounter between Galeone and Brian K., Galeone was escorted out of the building and left Rodeway without renting a room.

It is at this point where Galeone and Defendants/Appellees have varying accounts of the interaction that took place inside Rodeway.  Galeone alleges that upon entering he informed K. that he was disabled and that the dog was his service dog.  He claims that his dog had a medallion that was visible and shown to Brian K.  Brian K. informed Galeone that he could not rent him a room because of the hotel policy of refusing accommodations to disabled persons with service dogs.   Galeone also claims that Brian K. made fun of him and belittled him due to his disability.  After the encounter, Galeone posted a review online about the alleged incident at Rodeway.  Galeone alleges that Brian K., on behalf of Rodeway and Choice, wrote an online response that mocked him and accused him of faking the disability.

On the other hand, Appellants allege that Galeone entered Rodeway with his dog "fancifully" dressed in sunglasses.  When K. asked whether the dog was a service animal, Galeone became irate, spit on the staff, and threw a sign at him.  As a result of his behavior, Galeone was escorted outside by Rodeway personnel. Galeone then [visited a travel review website and sharply criticized] the hotel and Brian K.  Defendants/Appellees claim that it is Rodeway's policy that when a patron appears with an animal

- 2 -

that is not conspicuously identified as a service animal, hotel personnel may ask the patron whether the animal is in fact a service animal. If the patron advises staff that the animal is a service animal, the individual and the animal must be admitted without additional inquiry.[]

Trial Court Opinion, 8/24/20, at 3-4.

Galeone's alleged experience of August 6, 2017 at Rodeway led him to commence the instant matter by Complaint, filed on July 14, 2018, in which he raised one count of IIED and one count under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. It is undisputed that Galeone effected in-state service of original process on Rodeway and Brian K. on October 17, 2018, and out-of-state service on Choice on October 22, 2018.

On December 12, 2018, however, Choice filed preliminary objections asserting, *inter alia*, that all claims against it should be dismissed or, in the alternative, service should be stricken because service of original process was untimely under Pennsylvania Rules of Civil Procedure 404(a), which requires out-of-state service no later than 90 days after the filing of the Complaint. While Galeone's filing of an Amended Complaint on January 2, 2019, prompted the trial court to mark the Preliminary Objections as "moot", Choice reintroduced its objections in its Second Preliminary Objections, filed on January 22, 2019.

Specifically, Choice predicated its objections on Galeone's failure to cure untimely service, as mandated by Pa.R.C.P. 404(a), by reinstating the first Complaint through the prothonotary and then effecting proper service within 90 days thereafter. Because Galeone's act of filing an Amended Complaint

- 3 -

was not tantamount to undertaking the Rules' prescribed process and altogether failed to address the problem of defective service against it, Choice posited, the Amended Complaint was derivative of the deficient first Complaint that effectively became a nullity after 90 days had passed without service of process upon Choice. Accordingly, Choice asked the trial court to dismiss Galeone's Amended Complaint for its noncompliance with requisite rules governing service of process. For their part, neither Rodeway nor Brian K. had participated in any aspect of pre-trial proceedings, as counsel had not yet entered her appearance.

On February 21, 2019, Galeone filed a Brief in Opposition to Preliminary Objections contesting Choice's objections with respect to proper service and taking the position, *inter alia*, that actual service of process upon Choice brought both the underlying Complaint and the Amended Complaint in compliance with Rule 404(a).

On April 11, 2019, the trial court entered an order overruling Choice's Preliminary Objections to the Amended Complaint and directing all three Defendants/Appellees to file an Answer to the Amended Complaint within 20 days.

On May 13, 2019, Choice filed an Answer with a New Matter and crossclaim, which it refiled on June 21, 2019. Because Rodeway and Brian K., however, failed to file an Answer within the required time, Galeone filed a Praecipe for Default Judgment against them. On October 2, 2019, the court

granted Galeone's praecipe and entered default judgment against Rodeway and Brian K. on October 2, 2019.

On October 11, 2019, counsel for Rodeway and Brian K. entered her appearance, and she filed on their behalf a timely Motion to Open or Strike the Default Judgment predicated on the preliminary objections raised previously by Choice, namely, that Galeone failed to serve original process as required under the Rules of Procedure, albeit Rule 401(a) in this instance, applicable to service of process within the Commonwealth of Pennsylvania. This time, however, with the limitations period having expired in August 2019, the trial court credited the argument that Galeone failed to serve the Complaint/Amended Complaint within the time provided by the Rules of Civil Procedure, granted Rodeway's and Brian K.'s Petition to Strike, and gave them ten days in which to file an Answer to Galeone's Amended Complaint. Trial Court Order, 12/17/19.

On November 4, 2019, meanwhile, all Defendants filed Motions for Summary Judgment, which the trial court granted on February 22, 2020, after concluding Galeone's claims were time-barred for his failure to properly serve process upon Defendants within the applicable two-year statute of limitations. This timely appeal followed.

On Appeal, Galeone claims the trial court erred in granting summary judgment in favor of Defendants on its finding that he had failed to comply with the strict requirements of Rules 401(a) and 404(a) governing timely service of process. Specifically, he contends that his provision of actual notice

to each Defendant more than eight months prior to the expiration of the statute of limitations demonstrated the kind of good faith effort to serve original process that our decisional law has held should survive a challenge by preliminary objection.

Moreover, Galeone contends that Rodeway and Brian K.'s failure to file preliminary objections challenging his allegedly improper service of process in the first place, and opting, instead, to allow eight months to pass and the limitations period to run before filing their motion for summary judgment raising a limitations defense represented a belated and procedurally improper attack on service of process under our Rules of Civil Procedure.

This Court has previously determined:

> Our standard of review of the grant of a motion for summary judgment is well settled. We will only reverse the trial court's entry of summary judgment in instances where there was an abuse of discretion or an error of law by the trial court. Our scope of review is, however, plenary in nature.
>
> On review of an order granting summary judgment, we must determine whether the moving party has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. In making this determination, we must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. All doubts as to the existence of a factual dispute must be resolved in favor of the non-moving party and the entry of summary judgment is appropriate only in the clearest of cases.

*Moses v. T.N.T. Red Star Exp.*, 725 A.2d 792, 795–796 (Pa. Super. 1999) (citations omitted).  "Summary judgment is appropriate if a plaintiff's cause

of action is barred by the statute of limitations." ***Gojmerac v. Naughton***, 915 A.2d 1205, 1206 (Pa. Super. 2006).

In ***Gussom v. Teagle***, 247 A.3d 1046 (Pa. 2021), our Supreme Court explained the concept of a "good faith effort" to serve process upon named defendants, as follows:

> The Pennsylvania Rules of Civil Procedure ("Rules") allow a plaintiff to commence a civil action by filing either a praecipe for a writ of summons or a complaint. Pa.R.C.P. 1007. The Rules require a plaintiff to serve the defendant with original process within 30 days after the issuance of a writ or the filing of a complaint. Pa.R.C.P. 401(a). If the plaintiff does not effectuate service within that time period, she can praecipe for reissuance of the writ or reinstatement of the complaint. Pa.R.C.P. 401(b)(1). So long as the plaintiff files her writ or complaint before the expiration of the statute of limitations applicable to her cause of action, the original filing, as well as any subsequent reissuances or reinstatements, tolls the statute of limitations.
>
> In the seminal case of ***Lamp v. Heyman***, 366 A.2d 882 (Pa. 1976), [our Supreme] Court sought to end abuses of process by plaintiffs who tolled the statute of limitations by filing a writ of summons, had the writ repeatedly reissued, and deliberately failed to notify the defendant of the pending litigation." ***McCreesh v. City of Philadelphia***, 888 A.2d 664, 665 (Pa. 2005). "This process, while technically compliant with the Rules of Civil Procedure, nonetheless defeated the purpose of the statute of limitations, which is to protect defendants from stale claims." ***Id.*** Thus, in ***Lamp***, [our Supreme] Court held that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." ***Lamp***, 366 A.2d at 889. This "***Lamp*** rule" applies equally to actions commenced by way of the filing of a complaint.
>
> [T]he ***Lamp*** rule [was refined] in ***Farinacci v. Beaver County Industrial Development Authority***, 511 A.2d 757, 759 (Pa. 1986), holding that "***Lamp*** requires of plaintiffs a good-faith effort to effectuate notice of commencement of the action." In addition,

- 7 -

*Farinacci* clarified that: (1) the plaintiff carries an evidentiary burden of proving that she made a good-faith effort to ensure that notice of the commencement of an action was served on the defendant, *McCreesh*, 888 A.2d at 672; and (2) "[i]n each case, where noncompliance with *Lamp* is alleged, the [trial] court must determine in its sound discretion whether a good-faith effort to effectuate notice was made[,]" *Farinacci*, 511 A.2d at 759.

[Our Supreme] Court's most recent decision in the *Lamp*-line of cases is *McCreesh*, *supra*. In *McCreesh*, the [Supreme] Court expressed that when plaintiffs' improper actions in serving original process put defendants on actual notice of the commencement of actions, trial courts should "dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant." *McCreesh*, 888 A.2d at 674.

*Gussom*, 247 A.3d at 1048.

Ultimately, the *Gussom* Court concluded:

Prior to *Lamp*, a plaintiff could comply with the service requirements of the Rules of Civil Procedure and simultaneously undermine the purpose of the statute of limitations by initiating an action *via* the filing a writ prior to the expiration of the statute of limitations and continually reissuing that writ after the statute had run, all the while without serving notice on the defendant that the plaintiff had commenced an action. The *Lamp* Court substantially narrowed this avenue for potential abuse by holding that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Lamp*, 366 A.2d at 889. Stated more in the affirmative, *Lamp* requires plaintiffs to act diligently to meet their good-faith requirement to effectuate service of process upon defendants so as not to dilute the policies underlying the statute of limitations. *Id.* ("Our purpose is to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations.").

[ ] *Farinacci* [ ] aided the bench and bar by further defining the contours of the *Lamp* rule. As noted *supra*, the *Farinacci* Court

- 8 -

clarified that: (1) plaintiffs carry an evidentiary burden of proving that they made a good-faith effort to ensure that notice of the commencement of actions was served on defendants, *McCreesh*, 888 A.2d at 672; and (2) "[i]n each case, where noncompliance with *Lamp* is alleged, the [trial] court must determine in its sound discretion whether a good-faith effort to effectuate notice was made[,]" *Farinacci*, 511 A.2d at 759. Importantly, [the] decision in *Farinacci* did nothing to lessen a plaintiff's burden to act diligently in promptly serving notice of the commencement of an action on a defendant so as not to thwart the purpose of the statute of limitations. Indeed, the *Farinacci* Court ultimately concluded that the plaintiff therein failed to establish a good-faith effort to serve a writ where a four-week delay in service was attributable to counsel's negligence in forgetting to take the necessary steps to effectuate service of the writ. *Id.* at 759-60.

[The] *McCreesh* [ ] Court sought to resolve a pattern of conflicting opinions from the intermediate courts. On the one hand, some of those decisions required plaintiffs to comply strictly with the rules regarding service to satisfy the *Lamp*-*Farinacci* good-faith requirement, while, on the other hand, different panels allowed "a more flexible approach, excusing plaintiffs' initial procedurally defective service where the defendant has actual notice of the commencement of litigation and is not otherwise prejudiced[.]" *McCreesh*, 888 A.2d at 666. After explaining that "[n]either our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice[,]" the [*McCreesh*] Court stated that it embraced the logic of cases which "would dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant." *McCreesh*, 888 A.2d at 674.

Although *McCreesh* made clear that a plaintiff could fulfill her good-faith service mandate without strictly complying with the service rules as long as her efforts resulted in actual notice of the lawsuit to the defendant, like *Farinacci*, *McCreesh* did nothing to modify a plaintiff's duty to act diligently to serve notice of the commencement of an action so as not to undermine the policies that drive the statute of limitations. Nor, for that matter, did *McCreesh* change the rule clarified in *Farinacci* that the plaintiff carries an evidentiary burden to prove that she made a good-faith effort to effectuate service of process in a timely manner. To the

contrary[,] the **McCreesh** Court alluded to this evidentiary requirement.  **See id.** at 672 ("We subtly altered our holding in **Lamp** in **Farinacci**, requiring plaintiffs to demonstrate 'a good-faith effort to effectuate notice of commencement of the action.' ").

In sum, **Lamp** and its progeny require a plaintiff to make a good-faith effort in diligently and timely serving process on a defendant. When a defendant presents a factual dispute as to whether a plaintiff fulfilled this duty, the plaintiff carries an evidentiary burden to demonstrate that she met her good-faith mandate.  If a plaintiff presents credible evidence that she made this attempt at service, then she fulfills her requirement to prove good faith. If a plaintiff does not present such evidence, then she has failed to satisfy her evidentiary burden, regardless of whether her actions (or inaction) were intentional, unintentional, or otherwise.

However, pursuant to **McCreesh**, a trial court should not punish a plaintiff by dismissing her complaint where she is able to establish that her improper but diligent attempts at service resulted in the defendant receiving actual notice of the commencement of the action, unless the plaintiff's failure to serve process properly evinced an intent to stall the judicial machinery or otherwise prejudiced the defendant.

**Id.** at 1055-57.

Moreover, this Court has determined that "[w]hat constitutes a 'good faith' effort to serve legal process is a matter to be assessed on a case by case basis."  **Moses**, 725 A.2d at 796 (citation omitted).  "The inquiry into whether a plaintiff acted in good faith lies within the sound discretion of the trial court." **Englert v. Fazio Mech. Servs., Inc.**, 932 A.2d 122, 125 (Pa. Super. 2007) (citation and quotations omitted).

To resolve the issue raised by Defendants' motion for summary judgment, the trial court needed to determine whether Galeone made a good

faith effort to effectuate service of the Complaint upon Choice Hotels, Rodeway and Brian K., as the named defendants.

Pursuant to **McCreesh**, a trial court should not punish a plaintiff by dismissing a complaint where it can be established that improper but diligent attempts at service resulted in the defendants receiving actual notice of the commencement of the action. In **McCreesh**, the plaintiff served the writ of summons upon the Philadelphia City Law Department within the applicable statute of limitations period, but served it by certified mail, which was procedurally improper. There was no dispute, however, that the attorney representing the City of Philadelphia actually received the writ of summons at that time. **See McCreesh**, 888 A.2d at 666.

The plaintiff in **McCreesh** later effected proper service, but after the statute of limitations had expired. The **McCreesh** Court determined that the plaintiff's service by mail, though technically deficient, nevertheless constituted a good faith effort at notice where actual notice of the litigation within the statute of limitations and was not otherwise prejudiced. **Id.** at 666 n.1.

The **McCreesh** Court concluded:

Neither our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice. Therefore, we [ ] would dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant.

As stated earlier, [the Supreme] Court [has] attempted to prevent plaintiffs from abusing the liberal rules of civil procedure which had been enacted originally to protect plaintiffs from being thrown out of court despite commencing an action within the applicable limitations period. The cases requiring strict compliance hearken back to these draconian procedures and replace a factual good faith inquiry with an objective bright line standard of compliance that is wholly inconsistent with the concept of good faith.

*Id.* at 674. Accordingly, since actual notice of the commencement of the legal action was received within the statute of limitations period in **McCreesh**, the Supreme Court concluded that strict compliance with the procedural rules was unnecessary in the absence of both an intent to stall the judicial machinery plaintiff had set in motion and prejudice to the defendants.

With regard to appellate review of a summary judgment, the law is clear:

[W]e are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate court applies the same standard for summary judgment as the trial court.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

**Devine v. Hutt**, 863 A.2d 1160, 1166-1167 (Pa. Super. 2004) (citations omitted). Summary judgment is proper if an action is barred by the applicable statute of limitations. *Id.* at 1167.

"What constitutes a 'good faith' effort to serve legal process is a matter to be assessed on a case by case basis." **Moses**, 725 A.2d at 796; **Devine,**

- 12 -

***supra,*** 863 A.2d at 1168 (citations omitted).  A plaintiff's conduct need not constitute some bad faith act or overt attempt to delay before the ***Lamp*** rule applies; simple neglect or mistake is all that is necessary.  ***See Devine***, at 1168.  A "good faith effort" inquiry entails no mechanical approach, but the plaintiff bears the burden of demonstrating reasonable efforts toward proper service were made.  ***Englert*** 932 A.2d at 125 (Pa. Super. 2007) (citation omitted).

In the case *sub judice*, the trial court addresses this "good faith effort" jurisprudence in its Pa.R.A.P. 1925(a) opinion and explains that, under the facts, Galeone's failure to strictly comply with our rules governing service of process required it to grant both the Petition to Open Default Judgment and subsequent Motions for Summary Judgement.  For the reasons that follow, we agree.

"Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed."  ***Trexler v. McDonald's Corp.***, 118 A.3d 408, 412 (Pa. Super. 2015) (quoting ***Cintas Corp. v. Lee's Cleaning Services, Inc.,*** 549 Pa. 84, 91, 700 A.2d 915, 917 (1997)).  From the time a complaint is filed, service of original process inside the Commonwealth must be effected within thirty (30) days, ***see*** Pa.R.C.P. 401(a), and outside the Commonwealth within ninety (90) days, ***see*** Pa.R.C.P. 404(a).  If service is not made within the prescribed time, the prothonotary upon presentation of the original process,

shall continue its validity by reinstating the complaint by writing thereon "reinstated" on the complaint.

The Official Note to Rule 401 (and applicable, as well, to Rule 404) provides, in relevant part:

> If the applicable time has passed after the issuance of the writ or the filing of the complaint, the writ must be reissued or the complaint reinstated to be effective as process. Filing or reinstatement or substitution of a complaint which is used as alternate process under this subdivision has been held effective in tolling the statute of limitations . . . .

Pa.R.C.P. 401(a), Official Note.

It is well-settled that a challenge to defective service must be made through preliminary objections and cannot be advanced through a motion for summary judgment asserting the statute of limitations. Pa.R.C.P. 1028, "Preliminary Objections"; *See also Cinque v. Asare*, 585 A.2d 490, 492 (1990). A defendant who fails to object to service of the complaint in preliminary objections waives this objection. Pa.R.C.P. 1032, "Waiver of Defenses."

Galeone relies on *Cinque* to support his claim that Rodeway and Brian K. effectively slept on their rights to challenge defective service of process when they elected to forego preliminary objections, allowed over eight months to pass, and then, only after the limitations period had run, filed its petition to open default judgment and subsequent motion for summary judgment to raise the statute of limitations.

In **Cinque**, plaintiffs filed a timely complaint that it never served upon the several defendants but, instead, simply mailed to the attorneys representing defendants. Though the defendants never filed any acceptances of service, the attorneys entered an appearance on January 14, 1987, and filed an answer and new matter on February 3, 1987. Counsel for one defendant also filed a petition to consolidate the plaintiffs' actions, while counsel for another defendant made a request for the production of documents. The parties eventually engaged in discovery. *Id.*, 585 A.2d at 490–91.

Two years later, defendants filed preliminary objections, claiming that the complaint had never been served, and the trial court sustained the objections on May 3, 1989, and granted the plaintiffs leave to re-file and serve the complaint. An amended complaint was filed and served upon all the defendants, and defendants filed a motion for summary judgment on statute of limitations grounds, claiming that the only proper service occurred four and one-half years after the accident and two and one-half years after the filing of the complaint. The trial court granted the motion for summary judgment.

On appeal, we reversed. Observing at the outset that "[d]efects in service of process must be raised in preliminary objections[,]" we found dispositive the fact that the attorneys for the several defendants had not filed preliminary objections to defective service but, instead, had entered their appearances, made requests for documents or petitioned to consolidate the plaintiffs' actions, and eventually filed answers to the complaint without

- 15 -

having first filed timely preliminary objections to the manner of service. *Id*. Although one defendant did file preliminary objections, we concluded the filing occurred too late to support a defect theory.

Upon careful review of the record before us, we find *Cinque* inapposite to the present facts as they relate to Galeone's claim against Rodeway and Brian K. Like the defendants in *Cinque*, Rodeway and Brian K. received actual, albeit defective, notice of original process filed against them with time remaining in the limitations period, filed no preliminary objections against the defective service, and waited a considerable amount of time before raising a limitations defense in an answer to the plaintiffs' complaint.

Lacking in the present case, however, were the pivotal facts present in *Cinque* that the defendants had entered their appearances, participated in extensive discovery, and engaged in litigation. In short, *Cinque* stands for the proposition that defendants effectively waive their option of filing preliminary objections to defective process once they take affirmative steps to defend the case by filing an Answer to the Complaint and participating in discovery. Having both failed to object to defective service initially and failed to assert the statute of limitations in their initial answers, the *Cinque* defendants could not participate in pretrial proceedings and later claim that service was defective.

In contrast, Rodeway and Brian K. took no part in pre-trial proceedings or discovery, and its lawyer entered her appearance only after the Rodeway defendants received the court's order granting default judgment against them

and in Galeone's favor. At that time, counsel for Rodeway entered her appearance for the first time and filed a Motion to Strike or Open Default Judgment raising an objection to defective service that had been filed 65 days beyond the 30-day service of process time limit prescribed in Rule 401(a), and to the failure to reinstate the complaint and effect proper service for the remainder of the statute of limitations period.

Given these facts as they pertain to Defendants Rodeway and Brian K., we discern no error with the lower court's decision to strike default judgment and grant all three Defendants' motions for summary judgment asserting the limitations period had run. The court invoked the clear admonition in Rule 401(a), discussed *supra*, that the prescribed timelines shall be strictly imposed. Galeone's failure to adhere with such mandatory rules, the trial court reasoned, meant that he had failed to toll the statute of limitations and, thereby, keep his complaint "alive" for the remainder of the limitations period. *See Devine*, 863 A.2d at 1167. *See also Shackelford v. Chester County Hosp.*, 90 A.2d 732 (1997) (citing *Beck v. Minestrella*, 401 A.2d 762 (1979) (recognizing issuance *and delivery* of writ for service keeps action alive for period equal to original period as measured from the filing date of writ)). The trial court concluded, therefore, that the complaint was necessarily "dead" after 30 days had passed without proper service of process, and Galeone's failure to reinstate the complaint and serve it properly upon Defendants during the nine months that remained in the limitations period meant that he had failed to revive it.

Furthermore, while Galeone's initial—and only—attempt to serve the complaint occurred with nearly 10 months left before the limitations period expired, we decline to find he demonstrated a "good faith effort" to serve the complaint to Rodeway and Brian K. in compliance with the applicable rules of the court. Galeone knew he had served the Philadelphia Defendants approximately 95 days after the date on which he filed the complaint, which was over two months beyond the service of process timeline provided in Rule 401(a).

Yet, without any explanation given, he allowed more than nine months, and the limitations period, to pass without ever reinstating his complaint under the Rules and effecting proper service upon the Philadelphia defendants. Indeed, given the lack of proper service, Rodeway and Brian K.'s attorney did not even make an appearance in the case until after the expiration of the limitations period and only upon the Defendants' receipt of the court's order entering default judgment against them, a prejudicial occurrence that placed the defendants in serious difficulty. *See McCreesh*, 888 A.2d at 666, 674 (observing that the question of prejudice arises only if a plaintiff uses procedurally defective service but still manages to provide the defendant actual notice of the litigation in a timely manner).

As noted above, our courts have observed that a good faith effort to accomplish proper service of process may overcome a technical failure to do so. Decisional law, however, has looked to a lack of diligence, exhibited by the length of delay of service, as an important consideration in making the

good faith effort assessment, as extended delay may either reflect an intent to stall the judicial machinery set in motion by the filing of the complaint or cause defendants prejudice. *See*, *e.g.*, *Gussom*, 247 A.3d at 1057-58. Moreover, as noted, simple neglect and mistake alone may undermine a plaintiff's claim of good faith effort, and it is a plaintiff's burden to demonstrate his efforts in this regard were diligent and reasonable. *Bigansky v. Thomas Jefferson University Hosp.*, 658 A.2d 423, 433 (Pa. Super. 1995); *Lamp*, *supra*.

The totality of circumstances in the present matter leads us to conclude, therefore, that Galeone's dilatory behavior throughout the relevant time cannot qualify as either reasonable or a good faith effort to accomplish service of process. Effecting service 65-days beyond the Rule 401(a) deadline, and thereafter failing to reinstate the nullified complaint and effect proper service for the remainder of the limitations period, with no reason for such inaction and great delay under the rules, simply belies a good faith effort to serve defendants. For the foregoing reasons, we find no error with the court's reliance on Pa.R.C.P. 401(a) to dismiss Galeone's case against Defendants with prejudice.

In Galeone's second issue, he claims the court's Order of February 25, 2020, granting summary judgment in favor of Defendants/Appellees erroneously reversed the court's prior Order entered ten months earlier that had addressed the identical issue on the same evidentiary record.

As discussed, Choice filed preliminary objections in January 2019 asking the court to dismiss Galeone's Amended Complaint as a nullity because service of original process was untimely under the Rules of Civil Procedure and the Complaint had not been reinstated. The court's Order of April 11, 2019 overruled the preliminary objections and directed all defendants to file an Answer to the Amended Complaint.

According to Galeone, this Order settled the issue between the parties regarding whether he had tolled the statute of limitations, and it, thus, obviated the need for him to reinstate the Amended Complaint and effectuate new service of process, although he notes that reinstatement and service still would have been available to him had the court invalidated the Amended Complaint at that time, as four months still remained in the limitations period.

He asserts that he incurred an undue hardship when the court agreed to reopen the issue nine months later, after the expiration of the limitations period and in the absence of any new information relevant to the timing-of-service issue, and reverse its prior determination denying preliminary objections against service of the Complaint/Amended Complaint, and asks that we vacate such order. We disagree.

In the case *sub judice*, one judge entered the order overruling the preliminary objections, a second judge entered the order granting the petitions open or strike, and a third judge granted summary judgment. This scenario presents a potential coordinate jurisdiction problem. ***See Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 282 (Pa. Super. 2016)

(quoting *Commonwealth v. Daniels*, 104 A.3d 267, 278 (Pa. 2014)) ("Within [the law of the case] doctrine lies the directive that 'judges sitting on the same court in the same case should not overrule each other's decisions,' otherwise known as the 'coordinate jurisdiction rule.'").

However, case law indicates that the coordinate jurisdiction rule does not apply where the initial trial court ruling pertained to a type of petition/motion different from the latter trial court ruling. *See Mellon Bank, N.A. v. National Union Ins. Co. of Pittsburgh*, 768 A.2d 865, 870 (Pa. Super. 2001) (quoting *Goldey v. Trustees of the University of Pennsylvania*, 675 A.2d 264, 267 (Pa. 1996)) ("Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion.").

The following discussion is illustrative of the Rule mentioned in *Mellon Bank*:

> In the strongest of the Appellees' various briefs on this subject, Appellee Dr. Devenyi cites, *inter alia*, **Mellon Bank, N.A. v. National Union Insurance Co. of Pittsburgh, PA**, 768 A.2d 865 (Pa. Super. 2001), as controlling authority. In that case, one judge overruled preliminary objections asserted on the basis that the claimant in that case was not an insured, and did not provide an explanatory opinion. Later, when the same issue was raised before a different judge in a motion for summary judgment that did not present any new evidence in support of dismissal, this Court, citing **Goldey**, held that the differing nature of the two motions sufficed to preclude application of the coordinate jurisdiction rule.

> We agree that **Mellon Bank** is controlling. Consequently, we find it immaterial whether, in fact, the decisional record on summary judgment before Judge Wright varied at all from what Judge Reinaker had at his disposal in reviewing Appellees' preliminary objections. Under **Mellon Bank**, the procedural context alone precludes application of the coordinate jurisdiction rule. Accordingly, we reject Appellants' argument that Judge Wright was barred from granting Appellees summary judgment by Judge Reinaker's prior contrary ruling in the context of preliminary objections.

**K.H. ex rel. H.S. v. Kumar**, 122 A.3d 1080, 1092 (Pa. Super. 2015) (footnote and citation omitted).

Applying this decisional law to present matter, the coordinate jurisdiction rule (and, therefore, the law of the case doctrine) is not applicable, as the preliminary objections overruled by the first judge were different in kind from the petitions to open or strike and motions for summary judgment granted by the second and third judges.

Finally, as for Galeone's remaining challenges to the adverse entry of summary judgment, they assail the trial court's post-discovery determinations that he failed to make a *prima facie* case that Choice was vicariously liable for Rodeway and Brian K.'s alleged ADA violation and that he provided no medical testimony to show that he suffered an emotional injury necessary to support his IIED claim against Rodeway and Brian K. Initially, we note that Galeone's argument in support of these two claims offers no citation to pertinent authority as required by our jurisprudence.

In such instances, we have stated:

The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. This Court will not consider the merits of an argument which fails to cite relevant case [law] or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

[When an appellant] fail[s] to cite any legal authority to support [his] single-paragraph argument [such] failure [ ] waives the issue for purposes of review. *See* Pa.R.A.P. 2101 [and] 2119(a).

*In re Est. of Whitley*, 50 A.3d 203, 209–210 (Pa. Super. 2012) (internal case citations omitted). Accordingly, we deny relief on the basis of waiver.

Even if we were to consider the merits of the two waived claims, we would find persuasive the rationale in support of summary judgment in favor of Appellees/Defendants as set forth in the trial court's Pa.R.A.P. 1925(a) opinion. Regarding the claim of vicarious liability of Choice, the trial court surveyed the record as developed in discovery and determined it disclosed no basis upon which to conclude an agency relationship existed between Choice and Rodeway Inn.

Taking guidance from pertinent decisional law holding that vicarious liability hinges on evidence of franchisor control over both the result and manner of the franchisee's day-to-day operations, *see Myszkowski v. Penn Stroud Hotel*, 634 A.2d 622, 628 (Pa. Super. 1993), the trial court examined Choice's involvement in Rodeway's entire operations and found its limited role consistent with only an independent contractor relationship rather than an agency relationship marked by control of all operations.

Indeed, the trial court observed that the contract between Choice and Rodeway not only expressly disavowed the formation of an agency

relationship, it also clarified that Choice's oversight of Rodeway's contractual compliance was limited to adherence to end-result standards and not to the manner in which Rodeway conducted its day-to-day operations. We, therefore, discern no error with the court's reliance on *Myszkowski* to dispose of this claim.

Likewise, we concur with the trial court's summary disposition of Galeone's IIED claim given his failure to disclose any expert medical testimony in support his claimed emotional distress by the discovery deadline. The trial court opinion explains:

> In a claim for Intentional Infliction of Emotional Distress (IIED), expert medical testimony is necessary to establish that a plaintiff actually suffered the claimed emotional distress. *Gray v. Huntzinger*, 143 A.3d 924, 930 (Pa. Super. 2016). Tort law requires that the injury element be proven, but IIED does not provide [] what constitutes [] an "outrageous" injury. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988 (1987). In Kazatsky, the Supreme Court of Pennsylvania solved that ambiguity, concluding that "given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress." *Id*. at 995.
>
> Moreover, Pa.R.Civ.P. 4003.5 provides in subdivision (a)(1) that a party must identify each person whom the other party expects to call as an expert witness to testify at trial before the discovery deadline, absent extenuating circumstances. "If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action." Pa.R.Civ.P. 4003.5(b). The Superior Court has stated the purpose of disclosing the identity of an expert witness is to prevent against the unfair advantage of having a surprise witness testify at trial without the opposing attorneys having an adequate opportunity

to prepare rebuttal.  ***Sindler v. Goldman***, 454 A.2d 1054, 1056 (Pa. Super. 1982).

In the instant matter, the allegations in [Galeone's] Complaint, even if true, failed to support a prima facie case of IIED because he would be unable to provide expert medical testimony to show that he suffered an emotional injury.  On December 19, 2018, the [trial court] issued a case management order requiring [Galeone] to identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial no later than October 7, 2019.  On June 7, 2019, Choice served [Galeone] with an interrogatory requesting [Galeone] to identify each person expected to testify as an expert witness.  Def Choice RPD ¶ 10. [Galeone] responded to the interrogatory by claiming that he *might* call two different doctors but listed only two doctors' last names without any other identifying information.  Def. Rodeway's Mot. Summ. J. 22: 141.

By the time the discovery deadline closed, [Galeone] had failed to disclose any expert medical testimony.  Further, [Galeone] was unable to produce any medical records to verify the allegations in his Complaint.  [Galeone's] response to interrogatories even stated: "Plaintiff currently has no documents."  Def. Choice RPD ¶ 10.  Since [Galeone] cannot substantiate through medical evidence or medical testimony that he suffered an emotional injury, the record contains insufficient evidence of facts to make out a *prima facie* cause of action and, therefore, there is no issue to be submitted to a jury.[fn]

---

[fn]  More than three months after discovery had closed, [Galeone] produced four pages of notes from Allen Rubin, M.D.

---

TCO, at 8.

As the record supports the trial court's account describing Galeone's failure to supply expert medical testimony supportive of his claimed IIED

- 25 -

claim, we affirm summary judgment in favor of Rodeway and Brian K. on this claim.

For the foregoing reasons, we affirm the Order entering summary judgment in favor of Defendants with respect to all claims.

Order affirmed

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/2021